# TRIAL TRANSCRIPT – COURT'S SENTENCING INSTRUCTIONS

come back at 1:30. It's about 20 minutes till. Let's try to make it at 1:30. If you don't, don't worry about it because I appreciate you working through the lunch hour to get this thing done.

So nothing further, we'll see you after lunch, and thank you.

BY MR. WILLIAMS: Thank you, Your Honor.

[Recess taken at 12:40 p.m - Jury Out]

[Open Court - 1:53 p.m. - Jury Present]

BY THE COURT: Thank you, ladies and gentlemen. Please be seated.

Ladies and gentlemen of the jury, as I told you prior to the lunch break, the proof presentation has been completed in this second phase and we are now to the point where I will give you further instructions in this Phase 2.

I will call to your mind the fact that we have this jury instruction booklet which you utilized in the first phase. There have been added to it certain things. Y'all notice at the front, the index has changed. The index now shows not only the 26 instructions that you had at the outset, but also Number 27 which is the Court's preliminary instruction that I gave you prior to this Phase 2. And there are also additional instructions, instructions numbered 29 through 44 inclusive, which will be your instructions in this Phase 2.

I have put those instructions in the booklet and tabbed it

with a yellow tab that says Phase 2, if that can be of any assistance to you in helping you locate where they begin.

There is also a special verdict form in the booklet to which I will refer when giving you these instructions and it, likewise, has a tab at the top to show you where it is to be found and located.

I am going now to read these instructions to you. They are in the booklet. You will be given the booklet when you commence your deliberations. After I have read these instructions to you, the attorneys will make their summations and then the case will be presented to you for your consideration of this second phase.

Members of the jury, you have unanimously found the defendant guilty of the offenses charged in Counts 1 and 2 of the indictment. You must now consider whether justice requires that the defendant be sentenced to death or life imprisonment without the possibility of release for commission of these crimes. Regardless of any opinion you may have as to what the law may be or should be, it would be a violation of your oaths as jurors to base your verdict upon any view of the law other than that given to you in the instructions.

Some of the legal principals that you must apply to this sentencing decision duplicate those you followed in reaching your verdict as to guilt or innocence. Others are different. I have prepared full instructions on the law applicable to the sentencing decision in order to insure that you are clear in your duties

at this extremely serious stage of the case.

I have also prepared a special verdict form that you will complete. The form details special findings you are asked to make in this case and will help you perform you duties properly.

As I have just instructed you, the Government must meet its burden of proof beyond a reasonable doubt. A reasonable doubt is doubt based upon reason and common sense, after careful and impartial consideration of all the information received in this trial. It is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it.

However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt. The defendant does not have the burden of disproving the existence of anything the Government must prove beyond a reasonable doubt. The burden is wholly upon the Government. The law does not require the defendant to produce any evidence at all. It is the defendant's burden to establish any mitigating factors, but only by a preponderance of the evidence. This is a lesser standard of proof under the law than proof beyond a reasonable doubt.

A factor is established by a preponderance of the evidence if its existence is shown to be more likely so than no so. In other words, a preponderance of the evidence means such evidence as when considered and compared with that opposed to it produces

in your mind the belief that something is more likely true than not.

In making all the determinations you are required to make in this phase of the trial, you may consider any evidence that was presented during the guilt phase of the trial, as well as any evidence that is.presented at this sentencing phase of the trial.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

As I instructed you previously, in deciding what testimony of any witness to believe, consider the witness's intelligence; the opportunity the witness had to have seen or heard the things testified about; the witness's memory; any motives that witness may have for testifying a certain way; the manner of the witness while testifying; whether that witness said something different at an earlier time; the general reasonableness of the testimony, and the extent to which the testimony is consistent with other evidence that you believe.

The death penalty may be imposed only on persons who were 18 years of age or older at the time of the offense. If you find that the Government met its burden of proof in this regard, you should so indicate on the appropriate page of the special verdict form and continue your deliberations. If you find that the Government did not meet its burden of proof in this regard, you

should so indicate on the appropriate page of the special verdict form and no further deliberations will be necessary.

Before you may consider the imposition of the death penalty, you must first unanimously find beyond a reasonable doubt that the defendant intentionally aided and abetted in the killing of Sherman Williams.

Intent or knowledge may be proved like anything else. You may consider any statements made and acts done by the defendant and all the facts and circumstances in evidence which aid in a determination of defendant's knowledge or intent. You may, but are not required to, infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

If you find that the Government met its burden of proof in this regard, you should so indicate on the appropriate page of the special verdict form and continue your deliberations. If you find that the Government did not meet its burden of proof in this regard, you should so indicate on the appropriate page of the special verdict form and no further deliberations will be necessary.

If you unanimously find beyond a reasonable doubt that defendant intentionally aided and abetted in the killing of Sherman Williams, you must then proceed to determine whether the Government has proven beyond a reasonable doubt the existence of any of the following alleged statutory aggravating factors:

One, that the defendant committed the offenses in an especially heinous, cruel or depraved manner in that they involved torture or serious physical abuse to Sherman Williams;

Two, that the defendant committed the offenses in the expectation of receipt of something of pecuniary value; or,

Three, that Sherman Williams was particularly vulnerable due to old age.

If the Government does not satisfy each of you beyond a reasonable doubt that at least one of these statutory aggravating factors exist, you should enter a finding to that effect on the appropriate page of the special verdict form and no further deliberations will be necessary.

In the event that you unanimously find that the Government has proven beyond a reasonable doubt the existence of at least one of the statutory aggravating factors, please enter that finding on the appropriate page of the special verdict form. You must then consider whether the Government has proved beyond a reasonable doubt the existence of any non statutory or miscellaneous aggravating factors it has alleged.

To establish that the defendant killed the victim in an especially heinous, cruel or depraved manner, the Government must prove that the killing involved either torture or serious physical abuse to the victim. The term heinous, cruel or depraved are stated in the disjunctive. Any one of them individually may constitute and aggravating circumstance warranting imposition of

the death penalty.

Heinous means extremely wicked or shockingly evil, where the killing was accompanied by such additional acts of torture or serious physical abuse of a victim as to set it apart from other killings.

Cruel means that the defendant intended to inflict a high degree of pain by torturing the victim in addition to killing the victim.

Depraved means that the defendant relished the killing or showed indifference to the suffering of the victim as evidenced by torture or serious physical abuse of the victim.

Torture includes mental as well as physical abuse of the victim.

In either case, the victim must have been conscious of the abuse at the time it was inflicted, and the defendant must have specifically intended to inflict serious or severe mental or physical pain or suffering upon the victim apart from killing the victim.

Serious physical abuse means a significant or considerable amount of injury or damage, or damage to the victim's body which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

Serious physical abuse, unlike torture, may be inflicted

either before or after death and does not require that the victim be conscious of the abuse at the time it was inflicted. However, the defendant must have specifically intended the abuse apart from the killing.

Pertinent factors in determining whether a killing was especially heinous, cruel or depraved include: Infliction of gratuitous violence upon the victim above and beyond that necessary to commit the killing; needless mutilation of the victim's body; senselessness of the killing; and helplessness of the victim.

The word "especially" should be given its ordinary everyday meaning of being highly or unusually great, distinctive, peculiar, particular or significant.

To establish that the defendant committed the offense in the expectation of the receipt of anything of pecuniary value, the Government must prove, in essence, that the defendant committed the offense or assisted in committing it expecting to receive anything of pecuniary value.

The words "receipt" or "expectation of receipt" should be given there ordinary everyday meaning which included obtaining or expecting to obtain something. Anything of pecuniary value means anything in the form of money, property, or anything else having some economic value, benefit, or advantage.

As in the case for the statutory aggravating factors, you must unanimously agree that the Government has proven beyond a reasonable doubt the existence of any of the alleged non-statuto-

ry aggravating factors before you may consider such factors in your deliberations on whether the penalty of death is the appropriate punishment for the defendant in this case.

The law permits you to consider and discuss only those aggravating factors specifically claimed by the Government and listed below. You are not free to consider any other facts in aggravation which you conceive of on your own.

The non-statutory factors that the Government has alleged in this case are as follows:

One, that the defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to society;

Two, that the defendant has committed, attempted to commit, and/or threatened to commit other acts of violence in addition to the capital offenses committed in this case including, but not limited to, one or more of the following:

(a) An attempted armed robbery/murder at the Tri-States Liquor, Hot Springs, Arkansas, on or about June 8, 1995.

Three, that the defendant successfully eluded capture by the Federal Bureau of Investigation until his arrest in Mississippi on August 22, 1995;

Four, that the defendant has demonstrated a lack of remorse for the capital offenses committed in this case by statements and/or actions including but not limited to one or more of the following:

(a) that the defendant stated that he did not feel bad about the murder;

(b) that the defendant stated the victim begged for his life;

(c) that the defendant referred to the victim in vulgar terms.

Five, that Sherman Williams was killed to prevent the defendant from being identified as a participant in the robbery;

Six, that the victim's personal characteristics as an individual human being and/or the impact of the death upon the victims family include:

(a) the victim's personal characteristics which include, but are not limited to, one or more of the following:

(1) Father

(2) Grandfather

(3) College graduate

(4) Retired State Director of the Farmer's Home Administration

(5) Avid fisherman, photographer and jogger

(6) United States Army veteran

(b) that the family of the victim has suffered injury and loss as a result of the victim's death including, but not limited to, one or more of the following:

(1) Disruption of order

(2) Reality of violence

(3) A stunning, troubling experience

(4) Indescribable feeling of loss

As with the statutory aggravating factors, the Government bears the burden of proving beyond a reasonable doubt the existence of any of these non-statutory aggravating factors. Please enter your findings as to the non-statutory aggravating factors on the appropriate page of the special verdict form and continue your deliberations.

Before you may consider whether the penalty of death is the appropriate punishment, you must consider whether the defendant has established the existence of any mitigating factors. A mitigating factor is a fact about the defendant's life or character or about the circumstances surrounding the intentional aggravated killing that would suggest, in fairness, that a sentence of death is not the most appropriate punishment or that a lessor sentence is the more appropriate punishment.

Unlike aggravating factors, you do not need to find the existence of a statutory mitigating factor before you can proceed to determine the existence of any non-statutory mitigating factors.

It is the defendant's burden to establish any mitigating factors, but only by a preponderance of the evidence. This is a lessor standard of proof under the law than proof beyond a reasonable doubt. A factor is established by a preponderance of the evidence if its existence is shown to be more likely so than

not so; in other words, a preponderance of the evidence means such evidence as when considered and compared with that opposed to it, produces in your mind the belief that what is sought to be established is more likely than not true.

Also, unlike aggravating factors which you must unanimously find proved beyond a reasonable doubt, in order for you to consider them in your deliberations, the law does not require unanimity with regard to mitigating factors. Any juror persuaded of the existence of a mitigating factor by preponderance of the evidence must consider it in this case.

In the special verdict form relating to mitigating factors, you are asked to report the total number of jurors that find a particular mitigating factor established by a preponderance of the evidence. The statutory mitigating factors which the defendant asserts he has proved by a preponderance of the evidence are:

One, that defendant's participation in the offense was relatively minor;

Two, that defendant does not have a significant prior history of other criminal conduct;

Three, that defendant committed the offense while experiencing emotional disturbance;

Four, that other factors in defendant's background or character mitigate against imposition of the death sentence;

Five, that another defendant, Trinity Edward Ingle, equally

culpable for the crime, will not be punished by death.

The last factor which derives from the statute -- and I'm sorry, that's wrong.

All right. Gentlemen, I've made a change. Counsel, on Page 37, right after Item Number 5, the change will read as follows -- and ladies and gentlemen, this is your instruction --

The fourth factor above which derives from the statute permits you to consider anything else about the commission of the crime or about defendant's background or character that would mitigate against imposition of the death penalty. Thus, if there are any such mitigating factors whether or not specifically argued by defense counsel which are established by a preponderance of the evidence, you are free to consider them in your deliberations.

The non-statutory mitigating factors defendant asserts he has proved by a preponderance of the evidence are:

(1) Parental neglect, abandonment, or corruptive influence;

(2) Parental abdication as to holding defendant accountable for his behavior;

(3) Chaotic family instability;

(4) Modeled parental irresponsibility;

(5) Identification with criminally convicted peers;

(6) Reversal of parental roles between defendant and his mother; and,

(7) Youthfulness.

You are asked on the jury form to identify any mitigating factors, statutory or non-statutory, that any one of you finds has been proved by a preponderance of the evidence, but you are not required to do so.

After you have completed your findings as to the existence or absence of any aggravating or mitigating factors, you will then engage in a weighing process in determining whether a sentence of death is justified. All of you must weigh any aggravating factors that you unanimously found to exist, whether statutory or non-statutory, and each of you must weigh any mitigating factors that you individually find to exist.

If you unanimously conclude that the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, that such a sentence of death is justified; or, in the absence of any mitigating factors, that the aggravating factors are themselves sufficient to justify a sentence of death. You shall record your finding that death is justified in the appropriate section of the special verdict form.

If you determine that death is not justified, you shall complete the appropriate section of the special verdict form and you shall then proceed to determine whether the appropriate punishment is life imprisonment without possibility of release, and shall record that finding in the appropriate section of the special verdict form.

Keep in mind, however, that regardless of your findings with respect to aggravating and mitigating factors, you are never required to recommend a death sentence. If you do not determine that the punishment of death or life imprisonment without possibility of release is appropriate, the Court shall sentence the defendant as provided by law.

In reaching your conclusion about the aggravating and mitigating factors in this case, the instructions I gave you prior to your deliberations at the guilt phase about determinations of credibility issues apply equally here. You, the jury, determine the credibility of the witnesses and the weight to give to their testimony and the other evidence.

Also, engaging in the weighing process, you must avoid any influences of passion, prejudice or sympathy. Your deliberations should be based on the evidence you have seen and heard and the law on which I have instructed you.

The process of weighing aggravating and mitigating factors against each other or weighing aggravating factors alone, if there are no mitigating factors, in order to determine the proper punishment is not a mechanical process. You should not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater. You should consider the weight and value of each factor. In this regard, you may note that the statutory aggravating factor concerning the defendant's intent duplicates the intent element of the offense.

Further, you may note that the aggravating factor concerning pecuniary gain duplicates one of the elements of the offense of robbery.

The law contemplates that different factors may be given different weights or values by different jurors. Thus, you may find that one mitigating factor outweighs all aggravating factors combined. If one or more of you so find, you should determine that a sentence of death not be imposed.

Similarly, you may find that a particular aggravating factor sufficiently outweighs all mitigating factors combined to justify a sentence of death. If so, you may determine that a sentence of death be imposed. Only you, the jury, are to decide what weight or value is to be given to a particular factor in your decision making process.

In order to find in favor of a sentence for the punishment of death, all 12 of you must unanimously vote in favor of a sentence of death. In order to find in favor of a sentence of life in prison without possibility of release, all 12 of you must unanimously vote in favor of a sentence of life in prison without possibility of release.

At the end of your deliberations, if you determine that the defendant should be sentenced to death or to life imprisonment without possibility of release, the Court is required to impose that sentence. If you do not determine that either the punishment of death or life imprisonment without possibility of release

is appropriate, the Court shall sentence the defendant as provided by law. You should not speculate on the sentence the defendant might receive.

It is your duty as jurors to discuss the issue of punishment with one another in an effort to reach agreement if you can do so. Each of you must decide this remaining question for yourself, but only after full consideration of the information with the other members of the jury. Please discuss all aspects of these sentencing issues among yourselves with candor, frankness, and a due regard for the opinions of one another.

While you are discussing this matter do not hesitate to re-examine your own opinion and to change your mind if you become convinced that you are wrong. But do not give up your honest beliefs as to the weight or the or the effect of the information solely because others think differently or simply to finish the case. Remember that the parties and the Court are relying upon you to give full, considered and mature consideration to this sentencing issue. By so doing, you carry out to the fullest your oaths as jurors to well and truly try the issues of this case and to render a just result.

In your consideration of whether the death sentence is justified, you must not consider the race, color, religious beliefs, national origin or sex of either the defendant or the victim. You are not to recommend a sentence of death unless you have concluded that you would recommend a sentence of death for

Government's opening address. That should take us about an hour and then we'll take a recess and then hear the defense and we'll see where we are then.

So if you will, give attention to Mr. Snyder, please.

BY MR. SNYDER: Ladies and gentlemen, the first thing we've got to prove is that at the time of the offense, the defendant was at least 18 years old. The defendant's birth certificate has been introduced into evidence which shows that he was, in fact, 18 years old at the time of the offense.

Now the first statutory aggravating factor that we've got to prove is that Sherman Williams was intentionally killed, and the facts that were presented in the guilt phase of the trial clearly shows that there was an intentional killing of Sherman Williams.

The defendant told Kris Rogers on June 24, 1995 that he shot Mr. Williams in the head. In March of 1996, the defendant told Cindy Wallace that he and his partner followed the old man into the national park and he, Jeffery William Paul, shot the old man in the head.

One thing I would like to do at this time, ladies and gentlemen, is quote you some of the excerpts from the tape the defense played during the penalty phase, and this is a tape between the defendant's partner, Trint Ingle, and Jonah Jones and Derrick Bell, who were, at that time, Government informants. And during the tape the defendant played, I'm going to read you certain portions of the conversation.