ORIGINAL

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
JAN 28 2004
CHRIS R. JOHNSON, CLERK
BY DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA, )
)
Respondent, )
)
v. ) CRIMINAL NO. 96-60022-001
)
JEFFERY WILLIAM PAUL, )
)
Petitioner. )

**MOTION TO DISQUALIFY**
**THE HONORABLE JIMM LARRY HENDREN**

Jeffery Paul, the petitioner herein, by counsel, respectfully moves this Court to disqualify itself from presiding over or deciding any further issues in this matter. For his motion, Mr. Paul states:

1. Jeffery Paul was charged by indictment filed December 4, 1996, with the June 22, 1995, homicide of Sherman Williams. Trinity Ingle was charged as a co-defendant in the same offense. *See U.S. v. Ingle*, 157 F.3d 1147 (8th Cir. 1998). Both cases were tried before the Honorable Jimm Larry Hendren, Judge of the United States District Court for the Western District of Arkansas.

2. As in all potential federal capital cases, both the Ingle and Paul cases went through a screening process whereby then-Attorney General Janet Reno authorized the United States Attorney to seek the death penalty against each

296

defendant upon conviction. On January 27, 1997, the Government filed its notice of intent to seek the death penalty in these cases.

3. Trinity Ingle was the first defendant to be brought to trial. He was defended by appointed counsel, Cathleen V. Compton and Robert L. Depper. Upon Mr. Ingle's conviction for murder, on June 6, 1997, a jury assessed punishment at life imprisonment.

4. On June 9, 1997, the first business day after the Trinity Ingle life verdict, Mr. Paul's counsel, Lynn Williams, wrote the United States Attorney asking for reconsideration of the Government's decision to seek the death penalty in the Paul case. He did so based upon the jury's life verdict in the Ingle case. The return of a life sentence against a co-defendant is one of the factors specifically enumerated in the federal capital statute as justifying reconsideration of a decision to seek the death penalty. *See e.g.*, 18 U.S. C. §3592(a)(4) (providing as a statutory mitigating factor that "another defendant or defendants, equally culpable in the crime, will not be punished by death.").

5. On June 10, 1997, a committee of attorneys designated by then-Attorney General Janet Reno met in Washington, D.C., to reconsider the Government's decision to seek the death penalty against Mr. Paul. Mr. Williams asked to address the committee by teleconference, but that opportunity was never extended.

6. On June 12, 1997, the Department of Justice ["DOJ"] communicated to the parties that the committee had voted unanimously to waive the death penalty in Mr. Paul's case. Attorney General Reno had never before deviated from such a unanimous recommendation, so counsel for both parties assumed that the death penalty was no longer in the case. On that date, defense counsel and Assistant U.S. Attorney Steve Snyder were in the courthouse discussing the layout of the courtroom and the handling of physical exhibits and other logistics for the trial. Upon learning of the committee vote, Mr. Snyder expressed his belief that the death penalty was no longer involved in the case and packed his files to return to his office.

7. On June 13, 1997, Judge Hendren conducted a pre-trial conference with Mr. Williams and Mr. Snyder. No transcript or recording of this conference is included in the record; that omission is one subject of a pending motion for discovery filed by Mr. Paul. (Mr. Paul reserves the right to renew and/or supplement this Motion and/or file additional relevant motions once discovery has been provided and all relevant leads investigated).[1] According to Mr. Williams, the

[1] Despite the need for further discovery of information relevant to this Motion to Disqualify, petitioner nevertheless files this Motion at this time, because at a recent hearing on the discovery motion Judge Hendren made clear that he did not intend to recuse himself voluntarily. At the same time he suggested that if counsel believed any basis for disqualification existed, a motion should be filed as soon as possible. Counsel believe that a basis for judicial disqualification exists; counsel also believe that further

purpose of the conference was to discuss scheduling and other logistics surrounding the trial. However, the subject of the DOJ committee vote was discussed during the conference. *See* Exhibit "A" attached hereto, Declaration of Don Williams.

8. During the conference, Judge Hendren expressed his extreme displeasure with the vote of the Attorney's General committee. Judge Hendren expressed a strong belief that the case should go forward as a capital case, and that in his view, it was *his* decision and not that of the Government whether the case, once certified for death, could or should be later de-certified. At this hearing, Judge Hendren was visibly upset by the committee decision to de-certify Mr. Paul's case. *Id.* After this un-transcribed hearing Mr. Williams returned to his office and spent considerable time researching the question of whether Judge Hendren had the authority to block the Government from waiving the death penalty. (It is Judge Hendren's response to the committee decision, as expressed during this un-transcribed hearing and elsewhere, that forms a primary basis for this Motion to Disqualify).

---

discovery is necessary to fully develop facts and information relevant to disqualification. While it might be preferable to await full factual development prior to the filing of such a Motion, because of Judge Hendren's clear suggestion at the previous hearing, he is filing the Motion now. As noted throughout the Motion, Mr. Paul reserves the right to renew or supplement this motion as well as file additional pertinent motions once discovery has been granted (if it is) and all investigative leads have been pursued.

9. For reasons not yet known to counsel, Attorney General Reno took the apparently unprecedented step of deviating from the committee's unanimous recommendation to waive the death penalty, and refused to withdraw the death certification in Mr. Paul's case. The reasons for Ms. Reno's decision, and communications preceding that decision, as well as other possible responses taken by the Court with prior to or with respect to that decision, are also a subject of Mr. Paul's request for discovery herein. Mr. Paul reserves the right to supplement or renew his motion to disqualify the Court, as well as file additional motions, upon obtaining further discovery with respect to this matter and after all investigative leads have been pursued.

10. On the weekend of June 14 and 15, 1997, the Arkansas Bar Association conducted meetings at the Arlington Hotel in Hot Springs, Arkansas. One of the speakers at that meeting was Ms. Cathleen V. Compton, one of the attorneys who had defended Mr. Ingle at his capital trial. During that meeting, Judge Hendren engaged Ms. Compton in a conversation about the Paul case in which he repeated the sentiments and beliefs described in paragraph 8 above. *See* Exhibit "B" attached hereto, Declaration of Cathleen V. Compton. At least one other individual heard portions of the judge's injudicious comments about Mr. Paul.

11. Current counsel for Mr. Paul believe the judge's extra-judicial

comments expressing inappropriate opinions adverse to Mr. Paul, as set forth in Ms. Compton's declaration, are strongly indicative of improper and inappropriate judicial bias at the time of trial, and in any event are sufficient in and of themselves to warrant recusal from the case at the present time in §2255 proceedings.

12. In addition to the factual circumstances outlined in the foregoing paragraphs, recusal is appropriate because Judge Hendren's observations and conduct are at issue in a number of the claims set forth in Mr. Paul's petition for relief under 28 U.S.C. §2255. These include:

**Claim 3**, which is critical of the Court's conduct of the jury selection procedures at trial;

**Claim 8**, that the Judge was biased against Mr. Paul;

**Claim 19**, that Mr. Paul was deprived of his right to testify in his behalf (again, Mr. Paul has sought discovery relevant to this claim, and reserves the right to supplement and/or renew this Motion to Disqualify, as well as file additional relevant motions, once discovery has been provided and all pertinent investigative leads have been pursued);

**Claim 21**, that Mr. Paul was mentally incompetent before and during his trial (Mr. Paul has also sought discovery relevant to this claim, and reserves the right to supplement and/or renew this Motion to Disqualify, as well as

file additional relevant motions, once discovery has been provided and all pertinent investigative leads have been pursued);

**Claim 22**, that Mr. Paul's right to due process of law was violated when the Court failed to hold a competency hearing upon observing behavior on the part of Mr. Paul which should have prompted an immediate inquiry into Mr. Paul's competence to proceed (as with other claims, Mr. Paul has sought discovery relevant to this claim, and reserves the right to supplement and/or renew this Motion to Disqualify, as well as file additional relevant motions, once discovery has been provided and all pertinent investigative leads have been pursued);

**Claim 24**, that the Government engaged in repeated misconduct throughout all phases of the pre-trial, trial and post-trial proceedings in the case (Mr. Paul has sought discovery relevant to this claim as well, and reserves the right to supplement and/or renew this Motion to Disqualify, as well as file additional relevant motions, once discovery has been provided and all pertinent investigative leads have been pursued);

**Claim 26**, that Mr. Paul was denied his right to effective assistance of counsel throughout all phases of the pre-trial, trial and post-trial process (once again, Mr. Paul has sought discovery relevant to this claim, and

reserves the right to supplement and/or renew this Motion to Disqualify, as well as file additional relevant motions, once discovery has been provided and all pertinent investigative leads have been pursued);

**Claim 27**, that all of the errors set forth in Mr. Paul's petition for relief under 28 U.S.C. §2255 and the cumulative prejudice deprived Mr. Paul of a fundamentally fair trial.

13. The Court is either the subject of or a potential witness to many of the facts and circumstances making up the factual basis of part or all of many of the above claims. Indeed, the Court has already been called upon in Mr. Paul's discovery motion to rule upon requests for discovery of facts many of which concern files and information solely within the Court's knowledge. That alone suggests the propriety of ensuring that an independent judicial eye be given to the case, as fair and impartial decisions must be made about whether Judge Hendren should be required to divulge information which may well implicate his own fairness in the conduct of the trial of the case. Given his explicit expression of prejudgment as to what sentence would be appropriate prior to hearing the Government's evidence (as set forth in the accompanying declarations), and his role as the subject of, or witness to, many of the events integral to Mr. Paul's constitutional claims for relief, it is inappropriate for Judge Hendren to preside over

Mr. Paul's §2255 proceeding.

## SUGGESTIONS IN SUPPORT OF MOTION TO DISQUALIFY

## I. STATUTES GOVERNING DISQUALIFICATION

Section 144 of Title 28 (Bias or Prejudice of Judge) provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending *has a personal bias or prejudice either against him or in favor of any adverse party*, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.[2]

(emphasis supplied).

Section 455 of Title 28 (Disqualification of Justice, Judge, or Magistrate) provides in pertinent part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding *in which his impartiality might reasonably be questioned.*
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a

---

[2] "The 10 day rule has been an anachronism since 1963, when Congress abolished formal terms of court for United States district courts. *See* 28 U.S.C. §138." *See Liteky v. United States*, 510 U.S. 540, 560 (1994) (Kennedy, J. concurring).

> party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . .
>
> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person: . . .
>
> > (iv) Is to the judge's knowledge likely to be a material witness in the proceeding. . . .

(emphasis supplied).

## II. RELEVANT CASE LAW PRINCIPLES

Section 144 and paragraph (b)(1) of §455 are virtually identical grounds for recusal. Section §455 is distinct from §144 in that its provisions are applicable to all justices, judges and magistrates and places the obligation to identify the existence of those grounds upon the judge, rather than requiring recusal only in response to a party affidavit. *Liteky v. United States*, 510 U.S. 540, 548 (1994).

Once a motion to disqualify is filed under §144, the judge must pass on the sufficiency of the affidavit, but not the truth of the matter asserted. *See e.g., Henderson v. Dept. of Public Safety and Corrections*, 901 F.2d 1288, 1296 (5th Cir. 1990). A legally sufficient affidavit must be material and stated with particularity and the facts must be such that if true they would convince a reasonable person that a bias exists. *Id.* The previous requirement that the affidavit establish facts that show the bias is personal and not judicial appears to have been abolished by the

Supreme Court in *Liteky*. The Court in *Liteky* found that while an "extrajudicial source" is the common basis for establishing disqualifying bias, it is not the exclusive reason a predisposition can be wrongful or inappropriate. 510 U.S. at 551. "A favorable or unfavorable predisposition can also deserve to be characterized as 'bias' or 'prejudice' because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment." *Id.*

An additional distinction from §144 is that sub-section (a) of §455 created an entirely new "catchall" recusal provision, covering both "interest or relationship" and "bias and prejudice" grounds. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988). Importantly, this provision requires an "objective" evaluation, so that what matters is not the reality of bias or prejudice, but its appearance. *Liteky*, 510 U.S. at 548. Section 455(a) is:

> triggered by an attitude or state of mind so resistant to a fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings. ... Thus, under §455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute.

*Id.* at 557-558 (Kennedy, J. concurring in the judgment). Thus, "[i]t is the appearance of bias or partiality that matters here, not actual bias." *United States v.*

*Tucker*, 78 F.3d 1313, 1324 (8th Cir. 1996), *citing United States v. Poludniak*, 657 F.2d 948, 954 (8th Cir. 1981), *cert. denied*, 455 U.S. 940 (1982).

## III. REASONS WHY JUDGE HENDREN SHOULD BE DISQUALIFIED

In assessing the question of disqualification in the present case, it is important at the outset to recognize that issues of judicial bias or impartiality (and the attendant consequences for possible disqualification/recusal) at the trial level are distinct from those presented at this stage where the case is in §2255 proceedings. Whereas at trial a judge may well harbor personal views and attitudes about a particular case or defendant (and perhaps the appropriate outcome), so long as those attitudes do not implicate rulings and demeanor during the proceeding, a claim for disqualification may be untenable. In such situations, because the judge's role is not directly related to the actual outcome, i.e., he does not determine guilt or innocence (and in a capital case he does not even determine sentence), his own personal attitudes may not give rise to a claim for disqualification due to bias.

By contrast, in §2255 proceedings the judge's role places him directly in the position both of assessing facts and legal claims and making decisions that are dispositive of the ultimate outcome. For example, in deciding the merits of a claim of ineffective assistance of trial counsel, as a part of the prejudice inquiry the reviewing judge in §2255 proceedings must ultimately decide whether there is

some probability that certain proffered facts and information would have resulted in a different outcome had they been presented at trial. *See Wiggins v. Smith*, ___ U.S. ___, 123 S.Ct. 2527, 2534-44 (2003). In a sense, then, the reviewing judge must sit in judgment on the case and on the defendant as an "objective" juror and make a life-death determination. So too, with other claims in a §2255 proceeding, the judge operates as factfinder as well as legal arbiter; he or she is required to assess facts, make credibility determinations, and ultimately decide whether the proffered facts warrant a new trial. This role, then, is much different from the role played by the judge in a capital case at the trial level, and gives rise to a correspondingly different assessment on the issue of whether a judge's "impartiality might reasonably be questioned." 28 U.S.C. §455(a).

With that background, it is easy to see how Judge Hendren's extrajudicial remarks about Mr. Paul, the sentence he deserved, and the DOJ committee's unanimous withdrawal of the death notice, display a partiality which, *at this stage of the proceedings*, are akin to the remarks that revealed bias on the part of the trial court in *Berger v. United States*, 255 U.S. 22 (1921). In that case, an affidavit was filed based upon the "information and belief" of counsel, which quoted the judge as saying, "If anybody has said anything worse about the Germans than I have I would like to know it so I can use it," *Id.* at 29, and other statements reflecting

hostility toward persons of Berger's nationality. In that case the Supreme Court ruled:

> We are of opinion, therefore, that an affidavit upon information and belief satisfies the section and that upon its filing, if it show the objectionable inclination or disposition of the judge, which we have said is an essential condition, it is his duty to 'proceed no further' in the case. And in this there is no serious detriment to the administration of justice nor inconvenience worthy of mention, for of what concern is it to a judge to preside in a particular case; of what concern to other parties to have him so preside?

*Berger v. United States*, 255 U.S. at 34. Just as the trial judge in *Berger* should have recused himself from the case due to his expressions of hostility toward Germans in general, Judge Hendren's expressions of animosity toward Mr. Paul should also disqualify him from presiding over Mr. Paul's present motion under 28 U.S.C. § 2255, which presents, *inter alia*, a claim for relief based on Judge Hendren's personal bias, as well as many other claims which require the reviewing court to make subjective, life and death decisions about the defendant.

Judge Hendren's remarks about Mr. Paul are more problematic on the issue of disqualification than those of the trial court in *United States v. Townsend*, 478 F.2d 1072 (3rd Cir. 1973), where affidavits filed in support of a motion to disqualify the trial court reflected that he pursued a policy of intimidating persons seeking conscientious objector status to avoid being drafted into military service. Holding that the judge erred in denying the motion, the Court of Appeals explained the

procedure for resolving such a claim:

> It is the duty of the judge against whom a section 144 affidavit is filed to pass upon the legal sufficiency of the facts alleged. Neither the truth of the allegations nor the good faith of the pleader may be questioned. 'The section withdraws from the presiding judge a decision upon the truth of the matters alleged.' To warrant disqualification the affidavit 'must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.' Clearly, more than mere conclusions are required. Facts including time, place, persons, and circumstances must be set forth.

*United States v. Townsend*, 478 F.2d at 1073-74 (citations and footnotes omitted).

The fact that Judge Hendren is and will likely be a material witness as to relevant facts with respect to many of Mr. Paul's legal claims provides additional reasons why disqualification is necessary here. Indeed, at present the Court has under advisement petitioner's request for discovery which asks Judge Hendren to divulge facts regarding, *inter alia*, his own personal court file in the Paul case; his interactions with court personnel during the trial of the case; and any actions he may have taken with regard to the committee vote to de-certify Paul's death notice. Some of the claims to which these additional facts may relate include a claim that Mr. Paul was or became incompetent to stand trial

Mr. Paul has made a sufficient showing with this Motion and the attached declarations to warrant the relief he seeks. The declarations submitted herewith comply in every material respect. If, upon reading the declarations, Judge

Hendren's "impartiality might reasonably be questioned," then recusal is required under 28 U.S.C. §455. *Liljeberg v. Health Services. Acquisition Corp.*, 486 U.S. 847 (1988). "The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact." *Id.* at 869-870, *citing, Public Utilities Comm'n of D. C. v. Pollak*, 343 U.S. 451, 466-467 (1952) (Frankfurter, J., in chambers).

## IV. DEATH PENALTY CASES ARE DIFFERENT

The issue of judicial qualification in this particular case should be treated with even greater caution owing to the fact that a human life is at stake. The Supreme Court has long recognized that death penalty cases are quite different from ordinary felony cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Greater procedural protections are required in capital cases, and should also be extended to the post-trial review process to ensure that fairness and reliability in the ultimate outcome are guaranteed. And as noted above, the role of the judge in §2255 proceedings literally gives the judge the power of life and death. Every conceivable precaution should therefore be taken to make sure that the judge is,

and appears to be, completely fair and impartial at every step of the trial and post-trial process in a capital case. For these reasons, recusal issues should be and often are treated differently in death penalty cases. *See, e.g., Fla., Peek v. State*, 488 So.2d 52 (1986); *Isaacs v. State, Ga.*, 355 S.E.2d 644 (1987); *West v. State, Miss.*, 519 So.2d 418 (1988); *State v. Vickers*, Ariz., 675 P.2d 710 (1983).

WHEREFORE, for the foregoing reasons, counsel for Mr. Paul respectfully request that this Court disqualify itself from presiding over or deciding any further issues in this matter and enter such further order as the Court deems appropriate. In addition, and/or in the alternative, counsel for Mr. Paul requests that the Court grant him the discovery he seeks relative to this Motion prior to ruling, and/or permit the filing of supplemental pleadings regarding judicial disqualification once discovery has been completed.

This the 23rd day of January, 2004.

Respectfully submitted,

ROBERT L. MCGLASSON
Ga. Bar #492638
Federal Defender Program, Inc.
100 Peachtree St. NW, Suite 200

Atlanta, Georgia 30303
(404) 688-7530

Sean O'Brien by ELM w/express permission

SEAN D. O'BRIEN, Mo. Bar #30116
305 E. 63rd Street
Kansas City, Missouri 64113
(816) 363-2795