U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
FEB 1 9 2004
CHRIS R. JOHNSON, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| Respondent | § | |
| | § | |
| v. | § | Criminal No. 6:96CR60022-001 |
| | § | |
| JEFFREY WILLIAM PAUL | § | |
| | § | |
| Petitioner | § | |

**RESPONSE TO PETITIONER'S MOTION TO DISQUALIFY THE HONORABLE JIMM LARRY HENDREN**

Now comes the United States of America and files this response and opposition to Paul's Motion to Disqualify the Honorable Jimm Larry Hendren.

The evidence of purported prejudice and bias on the part of the Court alleged by Paul does not even remotely rise to a level that would justify, much less require, the Court's recusal from adjudicating Paul's motion under 28 U.S.C. § 2255. Groundless as it is, Paul's motion to disqualify is an obvious attempt to delay the conclusion of collateral review by compelling his claims to be adjudicated before a judge who is entirely unfamiliar with his case.

Whether, under 28 U.S.C. §§ 144 and 455(a), a district judge's purported bias requires disqualification in a particular case is committed to the sound discretion of the district judge and is reviewed only for an abuse of discretion. *Bannister v. Delo*, 100 F.3d 610, 614 (8th Cir. 1996). "'This is so becasue "[t]he judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion."'" *Id.* at 614, *quoting In re Kansas Pub. Employees Retirement Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996); *quoting In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2nd Cir. 1988), *cert denied*, 490 U.S. 1102 (1989). In the context of collateral review under 28 U.S.C. §§ 2254 and 2255, as in other contexts, there is a presumption of impartiality in the presiding judge and the movant bears "the

298

substantial burden of proving otherwise." *Bannister v. Delo*, 100 F.3d at 614 (citations omitted). Paul has not met this burden.

The basis advanced by Paul for disqualification is two fold: (1) that the Court questioned the authority of the Attorney General's Review Committee on Capital Cases to withdraw the notice of intent to seek the death penalty against Paul, and (2) in so doing, in Paul's view, seemingly implicitly inferred a bias in favor of continuing the death penalty prosecution.

According to Paul, after the jury failed to return a death sentence for co-defendant Ingle, the Attorney General's Capital Case Review Committee unanimously recommended withdrawal of the notice of intent to seek a death sentence ("decertification") for Paul.[1] Paul notes that, in the two weeks intervening between the jury's return of a life sentence for Ingle and the beginning of his trial, the trial judge expressed concern about the decertification by the committee and questioned the authority of the committee to decertify a case. Then, according to Paul, the Attorney General "took the apparently unprecedented step of deviating from the committee's unanimous recommendation . . . and refused to withdraw the death certification in Mr. Paul's case." Motion to Disqualify at 5.

Paul's attempt to discern bias in the Court's expression of concern over the authority of the Review Committee to decertify Paul's case is strained. First, as a practical matter, the

---

[1] Paul notes that the Attorney General subsequently overrode the purported unanimous committee recommendation and decided to continue to seek the death penalty for Paul. Paul speculates that this was the only occasion in which Attorney General Reno ever decided to seek the death penalty despite a unanimous recommendation from the review committee that the death penalty not be sought. The basis for these assertions is indiscernible. Historically, the Review Committee's recommendation has been considered part of internal DOJ deliberations and privileged. Admittedly, there have been a few isolated instances in which the Review Committee's recommendations to the Attorney General have been inadvertently disclosed to the public. Nonetheless, Paul's assertions regarding the decision in his case are, at best, unreliable hearsay, and the inferences that he seemingly would have the court draw from this purported evidence are entirely unwarranted.

Committee did not have the authority to command withdrawal of the notice of intent to seek the death penalty. Rather, the protocol made it clear that the authority to decide to seek the death penalty in any capital-eligible offense resided with the Attorney General. Correspondingly, the Attorney General, not the committee, had the authority to decertify the case.

Second, at the time, it was unresolved whether a decision to withdraw the death notice belonged exclusively to the Attorney General or whether the withdrawal required the concurrence of the Court. For example, under Federal Rule of Criminal Procedure 48, the Attorney General or the United States Attorney may dismiss an indictment, information, or complaint only by leave of court. Indeed, after the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002), it is clear that the notice of intent to seek the death penalty in Paul's case functioned very much as a superseding indictment charging the greater, death penalty-eligible capital offense, for which the statutory aggravating factors operated as the functional equivalent of elements. *Id.* at 609 (The "enumerated aggravating factors operate as "the functional equivalent of an element of a greater offense . . ..""). Accordingly, the issue raised by the Court, whether the Attorney General's Review Committee on Capital Cases could independently withdraw the death notice, even today draws support from the decision in *Ring*.

Regardless, even if the Court's concerns were construed to reflect a perception on the Court's part that Paul's case was appropriate for capital prosecution, that would not constitute impermissible bias. As the Supreme Court noted in *Liteky v. United States*, in construing 28 U.S.C. § 455(a) and (b)(1), "[n]ot *all* unfavorable disposition towards an individual (or his case) is properly described by th[e] terms [bias or prejudice]." 510 U.S. 540, 550 (1994)(emphasis in original). "The words [bias and prejudice] connote a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it

rests upon knowledge that the subject ought not to possess...."[2] *Id.* "[N]ot subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings." *Id.* at 551.

According to Paul, in the interim between Ingles' and Paul's trials, at a pre-trial conference with defense counsel Lynn Williams and AUSA Steve Snyder, "Judge Hendren expressed his extreme displeasure with the vote of the Attorney's General [sic] committee." Paul characterizes "Judge Hendren [as] visibly upset by the committee decision to de-certify Mr. Paul's case." Paul's characterization of this purported conference is inherently unreliable. It is based on the affidavit of Don Williams, currently an investigator with the Arkansas Public Defender Commission. Don Williams' perceptions of the purported pre-trial conference are based on a conversation with defense counsel Lynn Williams "[l]ong after the trial was over." Exhibit A to Paul's Motion to Disqualify at p.2. The subjective hearsay perceptions of Don Williams or even the subjective perceptions of Lynn Williams regarding Judge Hendren's views do not constitute competent evidence of the Court's perspective on the case. Even assuming, however, that the views attributed to Judge Hendren were in fact his views, they would not constitute prohibited bias.

The statements referenced by Paul at most evince a perception by the Court that the case should proceed as a death penalty prosecution; they do not reflect any affirmative opinion as to appropriate sentence. Nonetheless, it would have been entirely permissible following Ingle's trial for the Court to "have some tentative view as to what the outcome may be or even should be" in Paul's case. *United States v. Davis*, 785 F.2d 610, 617 (8th Cir. 1986). "[I]n order to

---

[2] Based in part on this understanding of bias and prejudice, the *Liteky* Court concluded that the extrajudicial source doctrine was encompassed by and therefore applicable to disqualifications under 28 U.S.C. § 255 (a) and (b)(1). The extrajudicial source doctrine requires the bias or prejudice underlying a judicial disqualification to stem from an extrajudicial source. *Liteky*, 510 U.S. at 544.

disqualify a presiding judge a litigant must show personal bias or prejudice that stemmed from an extrajudicial source and resulted in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Id.*

Opinions formed in the course of proceedings compel recusal only if the judge displays "such a deep-seated antagonism that fair judgement is impossible." *United States v. Larson*, 110 F.3d 620, 628 (8th Cir. 1997). "[J]udicial remarks during the course of trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id. quoting Liteky v. United States*, 510 U.S. 540, 555 (1994).

The affidavit of co-defendant Trinity Ingle's defense counsel, Cathleen Compton, also fails to establish prejudice that would justify recusal. Ms. Compton states in relevant part that "Judge Hendren made clear during this conversation that if he was right and that he had control over whether the case would proceed as a death penalty case, he would not allow the death notice in Paul's case to be withdrawn." Again even accepting Ms. Compton's accounting as accurate, it does not reflect impermissible bias but rather a justified conclusion based on the law and the evidence in the case.

In short, the allegations advanced by Paul, taken as true, wholly fail to establish bias or prejudice within the meaning of 28 U.S.C. §§ 144 and 455. The remainder of Paul's arguments are peripheral to his assertion of bias. Absent a showing of bias, it is entirely irrelevant that the Court will be required to decide the claims raised in Paul's Section 2255 motion and that in deciding those claims may be required to rely upon personal recollection.

The United States respectfully asks the Court to deny Paul's "Motion to Disqualify the Honorable Jimm Larry Hendren.

Respectfully submitted,

THOMAS C. GEAN
United States Attorney

Western District of Arkansas

STEVEN N. SNYDER
WILLIAM M CROMWELL
Assistant United States Attorneys
Western District of Arkansas

Margaret P. Griffey

MARGARET P. GRIFFEY
Attorney
U.S. Department of Justice
1331 F Street, N.W.
Room 337
Washington, D.C. 20004
Tel: (202) 353-7172

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the Government's Response to Petitioner's Motion to Disqualify the Honorable Jimm Larry Hendren were mailed to Paul's counsel at the following addresses:

Robert L. McGlasson
Attorney at Law
Federal Defender Program, Inc.
100 Peachtree St. NW, Suite 200
Atlanta, Georgia 30303

Sean D. O'Brien
Attorney at Law
Public Interest Litigation
305 East 63rd St.
Kansas City, Missouri 64113

Date: February 12, 2004

MARGARET P. GRIFFEY
Attorney
U.S. Department of Justice
1331 F Street, N.W.
Room 337
Washington, D.C. 20004
Tel: (202) 353-7172