**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HOT SPRINGS DIVISION**

**UNITED STATES OF AMERICA** PLAINTIFF

**v.** **Civil No. 96-60022-001**

**JEFFREY WILLIAM PAUL** DEFENDANT

**ORDER**

Now on this 26th day of February 2004, comes on for consideration defendant's Motion To Disqualify The Honorable Jimm Larry Hendren (document #296)("Motion To Disqualify"), and from said motion, and the response thereto, the Court finds and orders as follows:

1. Defendant is under sentence of death by this Court pursuant to 18 U.S.C. § 3591, *et seq.* Defendant's direct appeal was unsuccessful, United States v. Paul, 217 F.3d 989 (8th Cir. 2000), and the Supreme Court denied review on certiorari, Paul v. United States, 534 U.S. 829 (2001). Defendant's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 is currently pending before this Court, and defendant now moves for the undersigned to disqualify himself from presiding over or deciding any further issues in this matter in accordance with 28 U.S.C. §§ 144 and 455.

The United States opposes defendant's request for recusal, contending that the alleged basis for such a recusal is insufficient to either justify or require such recusal.

2. The Motion To Disqualify is based upon the declarations of two persons which are attached to the Motion. Defendant makes the following assertions in support of the Motion:



299

* that prior to their trials in 1997, then Attorney General Janet Reno had gone through a screening process before authorizing the United States to seek the death penalty against defendant and his co-defendant, Trinity Ingle (¶2, Motion To Disqualify);

* that Ingle was tried first, was convicted, and was sentenced to life in prison on or about June 6, 1997 (¶3, Motion To Disqualify;

* that on June 9, 1997, defendant's counsel wrote the U.S. Attorney asking for reconsideration of the decision to seek the death penalty for defendant (¶4, Motion To Disqualify);

* that on June 10, 1997, a Committee of Attorneys designated by Attorney General Reno addressed the issue, and on June 12, 1997, unanimously recommended to Attorney General Reno that the death penalty be waived for defendant (¶5 & 6, Motion To Disqualify);

* that on June 13, 1997, the undersigned conducted a pre-trial conference with counsel for defendant and counsel for the United States, at which the vote of the Attorney General's committee was discussed (¶7, Motion To Disqualify);

* that the undersigned "expressed his extreme displeasure with the vote of the Attorney's General [sic] committee . . . , expressed a strong belief that the case should go forward as a capital case and that in his view, it was *his* decision and not that of the Government whether the case, once certified for death, could or should be later de-certified" and that the undersigned ". . .



AO 72A
(Rev. 8/82)

was visibly upset by the committee decision to de-certify Mr. Paul's case" (¶¶8 & 10, Motion To Disqualify); and

* that "(f)or reasons not yet known to counsel, Attorney General Reno took the apparently unprecedented step of deviating from the committee's unanimous recommendation to waive the death penalty, and refused to withdraw the death certification in Mr. Paul's case" (¶9, Motion To Disqualify).

In ¶11 of the Motion, defendant's current counsel allege that "the judge's extra-judicial comments expressing inappropriate opinions adverse to Mr. Paul . . . are strongly indicative of improper and inappropriate judicial bias at the time of trial and in any event are sufficient in and of themselves to warrant recusal from the case . . . ."

3. The United States has filed no affidavits or declarations purporting to counter the assertions contained in the declarations filed by defendant. Instead, the United States contends:

* that defendant's assertions of bias do not "even remotely rise to a level that would justify, much less require, the Court's recusal . . . ." (¶2, Page 1 of Response);

* that "[g]roundless as it is, Paul's motion to disqualify is an obvious attempt to delay the conclusion of the collateral review by compelling his claims to be adjudicated before a judge who is entirely unfamiliar with his case" (¶2, Page 1 of Response);

* that whether a district judge's purported bias requires



AO 72A
(Rev. 8/82)

disqualification is committed to the sound discretion of the district judge because "the judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion" (¶3, Page 1 of Response, quoting from Bannister v. Delo, 100 F.3d 610, 614 (8th Cir. 1996));

* that the district judge's expression of concern about whether a decision to withdraw the death penalty certification belonged exclusively to the Attorney General, or required concurrence of the presiding judge, was not indicative of bias since that issue was then -- and may still be -- unresolved (¶2, Page 3 of Response); and

* that even if the district judge's expression of concern about how and by whom a death certification could be withdrawn should be construed as a bias, there is no competent evidence presented to show that such concern amounted to an impermissible bias such as would require recusal (¶¶ 2 and 3 of Page 3; Pages 4 and 5 of Response).

The United States concludes its Response by stating, "[i]n short, the allegations advanced by Paul, taken as true, wholly fail to establish bias or prejudice within the meaning of 28 U.S.C. §§ 144 and 455."

4. 28 U.S.C. § 144 provides that "[w]henever a party . . . files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either



AO 72A
(Rev. 8/82)

against him or in favor of any adverse party, such judge shall proceed no further . . ." 28 U.S.C. § 455 provides, in pertinent part, that a judge ". . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

As argued by the United States, the presiding judge is in the best position to appreciate the implications of those matters alleged in the recusal motion. Bannister, supra. As noted by both parties, the undersigned presided over the Trinity Ingle case which was tried immediately before the events giving rise to the motion. Both parties also note that, on or about June 13, 1997, the undersigned questioned whether the decision to withdraw the death penalty certification for the defendant rested exclusively with the Attorney General of the United States -- to be exercised in her own good time -- while a trial court waited with potential jurors, witnesses, parties, and counsel on hold.

The issue became moot in defendant's case since, without undue delay, the Attorney General apparently decided not to withdraw the death certification for defendant. The undersigned uses the word "apparently" because (1) the United States never filed any motion -- oral or written -- asking the Court to delay commencement of defendant's trial until the Attorney General had made her decision; (2) the United States never officially notified him of any decision on the matter; and (3) there was never any contact between him and



AO 72A
(Rev. 8/82)

the Attorney General concerning this matter.

It is not suggested by defendant, or his declarants, that the undersigned expressed "extreme displeasure" toward defendant or his counsel or that the undersigned was "visibly upset" with defendant or his counsel. Instead, it is asserted that these sentiments were directed toward the Attorney General and her Committee and concerned whether they, alone, could delay and/or change an indictment then before the court for trial by jury. Such expressions are not ". . . a *sufficient* condition for 'bias or prejudice' recusal, since *some* opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will *not* suffice." Liteky v. United States, 510 U.S. 540, 554 (1994) (emphasis and quotations in original).

The Supreme Court went on to say, in Liteky, that

> . . . opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.
>
> * * * * *
>
> *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance,



AO 72A
(Rev. 8/82)

> and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration -- even a stern and short-tempered judge's ordinary efforts at courtroom administration -- remain immune.

Id. 555,556 (emphasis in original).

As to the statements of defendant's declarants, the undersigned deems it unnecessary to comment on the assertions by one Mr. Williams (made some time after the happening of an event at which he was not present) concerning what another Mr. Williams allegedly told him (some time after the happening of the event) about a meeting between counsel of record and a U.S. District Judge in the latter's chambers concerning the upcoming trial of one of two persons charged with killing yet another Mr. Williams.

As to the statement of the other declarant, she is mistaken. Beyond that, the undersigned has no comment on either the content of her statement or her motives for making it.

5. The allegations advanced by the defendant, even if taken as true, fail as a matter of law to establish bias or prejudice within the meaning of 28 U.S.C. §§ 144 and 455. Viewed in the light most favorable to defendant, the statements attributed to the undersigned -- uttered in chambers, with no jury present but with counsel for both parties present -- amount at most to "expressions of impatience, dissatisfaction, annoyance, and even anger," which are not sufficient to justify recusal. Litke, *supra* 510 U.S. at 555. Especially is this true where the expressions --

however characterized -- are said to have been directed toward the Attorney General and her Committee and not toward the defendant or his counsel.

Moreover, even if such expressions *had* been directed toward defendant and/or his counsel, they still would not amount to impermissible bias. "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." They are only sufficient to do so if they evidence "such a high degree of favoritism or antagonism as to make fair judgment impossible." Id. The undersigned believes that no reasonable person could properly conclude that his questioning of an apparent contention by someone not before the Court -- or even by parties who were properly before the Court -- concerning a matter of law or legal procedure amounted to the display of "such a high degree of . . . antagonism as to make fair judgment impossible." Id.

Accordingly, defendant's Motion To Disqualify the Honorable Jimm Larry Hendren is **denied**.

**IT IS SO ORDERED.**

**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

FEB 26 2004

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK



AO 72A
(Rev. 8/82)