U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
AUG 0 5 2004
CHRIS R. JOHNSON, CLERK
BY DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 96-60022-001 |
| | ) | |
| JEFFERY WILLIAM PAUL, | ) | |
| | ) | |
| Petitioner. | ) | |

**MOTION TO DISQUALIFY AUSA STEVE SNYDER, AND/OR ANY MEMBER OF THE U.S. ATTORNEY'S OFFICE FOR THE WESTERN DISTRICT OF ARKANSAS, AND DOJ ATTORNEY MARGARET PORTMAN GRIFFEY, AND ANY MEMBER OF HER OFFICE, FROM PARTICIPATING FURTHER IN THIS CASE AS COUNSEL FOR THE UNITED STATES OF AMERICA**

COMES NOW defendant, Jeffery William Paul, by counsel, and moves this Court, pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, to disqualify AUSA Steve Snyder, and/or any member of the U.S. Attorney's Office for the Western District of Arkansas, and DOJ Attorney Margaret Portman Griffey, and any member of her office, from participating further in this case as counsel for the United States of America. In support of his motion, defendant states:

1. In a letter dated July 19, 2004, this Court transmitted to the parties two

311

letters it had received from petitioner regarding the status of his ongoing appeals. The Court indicated its intention to hold a hearing in response to these letters, and ordered the parties to file a response to the letter by July 26, 2004.

2. Undersigned counsel McGlasson was out of the office at the time, attending two separate conferences and then taking four days of vacation time, and was not scheduled to be back at work until after the July 26 deadline. In addition, undersigned counsel believed that an appropriate response to the Court's letter could not be made until counsel had conferred with petitioner himself. Hence, due to the obvious scheduling problems, petitioner's counsel filed a request to extend the deadline for responding to the Court's July 19 letter.

3. This Court immediately denied that request in an order dated July 27, 2004. The Court also wrote a letter directly to petitioner, also dated July 27, 2004, responding to petitioner's recent letters to the Court, and enclosing a copy of the July 27 order. The July 27 order scheduled a video conference "hearing" for August 6, 2004.

4. The next day, in a letter dated July 28, 2004, the Court informed the parties that it had communicated (through various unidentified personnel in chambers) in an *ex parte* manner with agents of the United States of America, a party to this litigation. According to the July 28 letter, that communication

involved at least two separate conversations, one between the Court's law clerk (unidentified) and AUSA Steve Snyder, counsel for the government, and one between the Court's courtroom deputy (unidentified) and Brad Shoemaker, identified by the Court in the letter as petitioner's case manager at the U.S. Penitentiary in Terre Haute, Indiana, which is a prison within the U.S. Bureau of Prisons (contained within the Department of Justice) and is the prison in which petitioner is confined. As set forth more fully below, these conversations involved matters relating directly to the issues the Court has indicated it intends to address at the scheduled hearing on August 6, 2004.

5. Recognizing as much, in the July 28 letter the Court indicated that it "will not, in any way, consider the information conveyed to its staff by either Mr. Snyder or Mr. Shoemaker in connection with its consideration of Mr. Paul's case." Letter of July 28, 2004, at p. 2. Later the Court further emphasized both that it "has no reason to believe that either communication was intended to improperly influence the Court" and that it "emphatically states that it will not be so influenced by them in any manner." *Id.* at 3.

6. Notwithstanding the Court's confidence as to the innocent nature of these improper communications, it is hard to perceive them as anything *but* direct attempts by a party to the litigation to prejudice Mr. Paul and his case before this

Court. Moreover, without further inquiry of the Court as well as the actual participants in these communications, it is also impossible to assess whether, as the Court submits, it *can or should* be able fairly to proceed as an impartial judge in this matter. This is especially true given the nature and content of petitioner's assertions in his previous Motion to Disqualify the Honorable Jimm Larry Hendren, which he renews and which he incorporates herein by express reference.

7. For example, in the conversation between Mr. Snyder and the unidentified law clerk, Mr. Snyder apparently told the clerk (who then related the information directly to the Court and another law clerk) about alleged associations between petitioner and David Hammer, another inmate on federal death row in Terre Haute, Indiana, and one who according to Mr. Snyder's communication with the law clerk, has repeatedly vacillated about whether to terminate his own ongoing appeals in his case. According to the July 28 letter, Mr. Snyder also communicated his opinion (or that of another agent of the party-U.S. government or both) that Mr. Hammer's vacillations were merely a "tactic" designed to "delay" the proceedings in his case. Implicit in these communications is the obvious view that Mr. Paul, under Mr. Hammer's influence, is likely engaged in similar "tactics." The Court does not provide any details in its July 28 letter regarding the conversation between Mr. Shoemaker and the unidentified courtroom deputy, but

merely indicates that it involved "much of the same information imparted by Mr. Snyder."

8. Again, it is difficult if not impossible to discern what purpose was to be served by either Mr. Snyder or Mr. Shoemaker talking to Court staff about David Hammer, his alleged relationship to and undue influence over Jeff Paul, his ongoing appellate machinations, and their decidedly critical opinion thereof, *other than* as an attempt negatively to influence the Court's own viewpoint regarding Mr. Paul's motives. Put another way, it strains credulity to devise a *benign* motive for such communications. This is all the more clear given that the same negative, prejudicial information (which was and is directly related to the merits of the most recent ongoing matter in dispute in the case) was being conveyed by two different agents of the party-U.S.A. in two separate conversations with two different staff-persons in the Court's chambers on the same day.[1]

9. Viewed in this light, the Court's rush to whitewash the communications as "inadvertent" chitchat devoid of any illicit purpose, itself bears closer scrutiny before petitioner can adequately assess whether the Court is capable of acting as a

---

[1] It bears noting in this context that, upon information and belief, the government posited the same opinion of David Hammer's alleged motives in the Hammer case itself, and this viewpoint was ultimately rejected by the U.S. Court of Appeals for the Third Circuit, which allowed Mr. Hammer finally to proceed in his appeals despite the repeated vacillations in the past.

fair and impartial arbiter on the pending issues or on any other issues in the case. Upon considering the Court's July 28 letter, one is left wondering how and why the Court was so quick to conclude that these *ex parte* communications, though improper, were not intentionally so.

**SUGGESTIONS IN SUPPORT OF MOTION TO DISQUALIFY**

Disqualification is a remedy that federal and state courts have readily imposed to sanction prosecutors and/or other members of the prosecutorial team who have committed serious misconduct or engaged in serious unethical behavior in their handling of a case. For example, in United States v. Omni International, 634 F.Supp. 1414 (D. Md., 1986), that sanction was imposed. In response to flagrant misconduct committed by the prosecutor and case agents at a pretrial hearing in the case, the court ordered that the indictment be dismissed and that if the government decided to re-indict, the assistant U.S. Attorney ["AUSA"] and agents who had engaged in the misconduct would be disqualified from participation in the case.

In People v. Merritt, 19 Cal.App.4th 1573 (Cal. Ct. App., 1993), disqualification was likewise imposed. There, an investigator from the Los Angeles District Attorney's office engaged in the suppression of evidence. Although no attorney in the office was implicated in the misconduct, the trial court

granted a defense motion to disqualify the entire district attorney's office. On appeal, the appellate court reversed the decision disqualifying the entire office, but importantly here, ruled that the district attorney's investigator and anyone who had knowledge of or approved of the investigator's offending activities were also disqualified from any further involvement or participation in the case.

Imposing disqualification as a sanction in Omni and Merritt served to protect the defendant's rights to a fair trial, and also to safeguard the fair administration of justice and promote public confidence in the judicial system. Moreover, AUSA Snyder's misconduct is a critical issue in this lawsuit, and will be the subject of the litigation on several substantive claims in the petition.

Of most significance here are the set of companion cases arising out the of the northern district of Illinois involving the El Rukn gang defendants. See e.g., United States v. Burnside, 824 F.Supp. 1215 (N.D.Ill., 1993); U.S. v. Boyd, 833 F.Supp. 1277 (N.D.Ill., 1993) [hereinafter the "El Rukn" cases].

The court in Boyd did not actually order that Hogan or his colleagues be disqualified in the Boyd cases. In fact, Hogan's office followed Department of Justice Policy and instigated an independent investigation after which Hogan voluntarily recused himself from the case. In any event, the voluntariness of the recusal in that case is of no moment to the question presented here, but what

ultimately happened in the Boyd cases on the issue of disqualification is. As in Boyd, so too here, the offending prosecutors and "anyone .. who was in [that prosecutor's] unit, under his supervision, or involved" in the litigation of the case during which the misconduct occurred should be excluded from further participation in this case. As in Boyd, an independent prosecutor should be allowed to investigate, respond to, disclose evidence regarding, and ultimately get to the bottom of, the substantial allegations of misconduct contained in this case. As the Boyd cases demonstrate, failure to do so will only prolong the ongoing misconduct and further exacerbate the error in this case.

In fact, in Erickson v. Newmar Corp., 87 F.3d 298 (9th Cir. 1996), the appellate court made clear that a lower court's supervisory duty to consider disqualification of an attorney engaged in misconduct is much broader than the duty described in Omni concerning the issue of dismissal of an indictment:

> Whenever an allegation is made that an attorney has violated his moral or ethical responsibility, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of members of the bar. The courts, as well as the bar, have a responsibility to maintain public confidence in the legal profession. This means that a court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety.

*Id.* at 303 (citations omitted).

In Omni, the defense initially filed a pre-trial motion to dismiss the indictment, and alternatively to disqualify the U.S. Attorney's office, due to alleged government misconduct in breaching the attorney-client privilege. The court ultimately rejected that ground. However, in the course of the hearing on that motion, during which the U.S. Attorney's office was allowed to represent the government, the government attorneys engaged in misconduct, which came to light during the hearing, and became the basis for the court's ultimate decision to dismiss the indictment and to disqualify the offending assistant U.S. attorney and his subordinates on the case in the event of a re-trial.

In this case, the conduct of counsel for the government, and/or persons working under the supervision of the Department of Justice, appears calculated to prejudice the Court against Mr. Paul on the merits of his case. Counsel for Mr. Paul can discern no benign motive or reason for the improper *ex parte* communications with Court personnel. The Office of the United States Attorney and the Department of Justice should therefore be disqualified from further action in this case.

WHEREFORE, for the foregoing reasons, petitioner moves this Court to disqualify AUSA Steve Snyder, and/or any member of the U.S. Attorney's Office for the Western District of Arkansas, and DOJ Attorney Margaret Portman Griffey, and any member of her office, from participating further in this case as counsel for the United States of America, and to grant such further relief as the Court deems appropriate.

Respectfully submitted,

William C. Odle
FOR
Robert L. McGlasson

ROBERT L. MCGLASSON
Federal Defender Program, Inc.
100 Peachtree St. NW, Suite 200
Atlanta, GA 30303
404-688-7530

William C. Odle
FOR Sean D. O'Brien

SEAN D. O'BRIEN, MO Bar #30116
305 E. 63rd Street
Kansas City, MO 64113
816-363-2795

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Motion has been served upon counsel for respondent by sending a copy of same *via* U.S. mail to:

Mr. Steven N. Snyder, Esq.
Assistant U.S. Attorney
P.O. Box 1524
Fort Smith, AR 72901
fax # 479-783-7876

Ms. Margaret P. Griffey, Esq.
Chief, Capital Case Unit
Criminal Division
U.S. Department of Justice
Room 6140, Patrick Henry Bldg.
601 D. Street, N.W.
Washington, D.C. 20530
fax # 202/353-5779

This 5th day of August, 2004.

[signature] for Sean D. O'Brien
Sean D. O'Brien