IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
SEP 0 2 2004
CHRIS R. JOHNSON, CLERK
BY
DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 96-60022-001 |
| | ) | |
| JEFFERY WILLIAM PAUL, | ) | |
| | ) | |
| Petitioner. | ) | |

**DEFENDANT'S RESPONSE TO COURT'S ORDER OF AUGUST 6, 2004**

COMES NOW Petitioner, by counsel, and in compliance with this Court's order of August 6, 2004, states and declares as follows:

1. This Court on August 6, 2004, ordered the parties to submit post-hearing briefs on issues raised by Mr. Paul's *pro se* letters to the Court and subsequent statements to the Court expressing a desire to waive his appeals and submit to execution by lethal injection.

2. Mr. Paul thereafter on August 17, 2004, met with counsel and signed a notice of his withdrawal of his request to waive his appeal, and expressed his desire to continue to pursue relief from his conviction and sentence, which Mr. Paul believes to be unfair and imposed in violation of the Constitution.

3. Counsel for Mr. Paul on August 18, 2004, filed Mr. Paul's withdrawal with the Court, and moved to terminate proceedings related to Mr. Paul's *pro se*

32

attempts to waive his appeal, including this briefing schedule, as there is no longer a request to waive appeals pending before this Court.

4. Counsel for Mr. Paul have not yet received an order from the Court on the aforementioned motion, and therefore submit this brief in compliance with the Court's August 6th order.

5. Jeffrey Paul is incarcerated at the United States Penitentiary at Terre Haute, Indiana. As the Court and the parties are aware, Mr. Paul attempted to end his own life by hanging himself by his neck in his cell on the 17th or 18th of November, 2003. The Bureau of Prisons has declined the requests of Mr. Paul's counsel for documents relating to Mr. Paul's attempted suicide and subsequent treatment, but counsel have spoken informally to corrections officers who witnessed the event. Based on those conversations, counsel understands that an officer making his routine rounds observed that Mr. Paul had obstructed the window in the door of his cell by hanging a towel over it; that the officer was nevertheless able to see that Mr. Paul was hanging by his neck in his cell so that his feet could not reach the floor, and he appeared dead or unconscious. The officer called for back-up, and three other officers responded. They fumbled for a key to Mr. Paul's cell and succeeded in opening the door. The officers rushed in, and one supported Mr. Paul's weight while another removed the cloth that was

tied around his neck. Mr. Paul was not breathing, and his face was a deep shade of purple. An officer hit him sharply in the back in an attempt to restore breathing; on the third attempt Mr. Paul gasped for breath, and resumed breathing. He was taken to the infirmary and placed in an observation cell, where apparently he has remained ever since.

6. The observation cell is stripped of anything that Mr. Paul could use to hurt himself. Nevertheless, on at least two occasions, Mr. Paul has apparently broken the safety glass out of the window of the door of his cell with his bare hands, and he has used the shards of broken glass to cut himself on his arm and wrist, inflicting deep wounds that required stitches. Counsel is unaware of the precise dates of any such subsequent self-inflicted injuries.

7. Mr. Paul remains in the observation cell, where he is not allowed to smoke cigarettes or call his family. He is locked down 23 ½ hours a day. He is allowed 30 minutes a day in an exercise cage. Mr. Paul takes all meals in his cell. He has little contact with corrections officers or other inmates. He is confined in a cell which is not air conditioned, and he does not have a window he can open to circulate the air. Although he was apparently prescribed some type of medication by prison mental health care providers for a brief period following his suicide attempt, the medication was discontinued. Due to the prison's refusal to provide

information, counsel has no knowledge of the type of medication that was provided, or the reasons for its discontinuation. To date medication and treatment records have not been made available to Mr. Paul's counsel.

8. Counsel attempted to outline this information for the Court during the recent video-conference hearing, but Mr. Paul interfered with his ability to do so by pressing the "mute" button on the microphone. Transcript of Proceedings, August 6, 2004, p. 53. (Hereafter "Tr. __").

9. After his initial suicide attempt, Mr. Paul has on two occasions written the Court to request that his appeals be dropped and that his sentence be carried out, and on both occasions he withdrew that request after consulting with counsel. At the hearing on August 6, 2004, Mr. Paul's counsel advised the Court that they had serious reservations about Mr. Paul's competence, which prompted them to attempt to perform a mental evaluation of Mr. Paul. Because the U.S. Penitentiary will not allow an independent expert into the prison to see Mr. Paul without a court order, counsel have moved this Court, *ex parte*, to authorize such access.

10. This Court on November 21, 2003, found that it was appropriate for Mr. Paul's counsel to proceed *ex parte* on their request for an order authorizing mental health experts to enter the prison to examine Mr. Paul, and thereafter, on December 2, 2003, entered its order granting counsel's request. However, on

December 4, 2003, the Court withdrew such approval upon receipt of a *pro se* communication from Mr. Paul asking that his appeal be terminated. Mr. Paul withdrew that request on December 9, 2003. At the same time, through counsel, he requested that the aforementioned mental health expert access order be reinstated. That request remains pending, and is repeated in Mr. Paul's recent *ex parte* motion for funds and for access.

11. Defendant's position on the issue of waiver is first that there is no motion to waive pending before the court, and therefore the issue is moot; second, that the attempted waiver was incompetent, and was not knowing, voluntary and intelligent, and third, that the interests of justice and judicial economy would be served by taking no action on any past or future attempted waivers by Mr. Paul of his right to pursue relief from his conviction and sentence.

## SUGGESTIONS

### A. THE ISSUE OF WAIVER IS MOOT

Mr. Paul's most recent communication to this Court, through counsel, advised the Court that he wishes to continue his appeal of his conviction and sentence of death:

> I, Jeffrey William Paul, hereby advise the Court that I wish to pursue my pending motion under 28 U.S.C. § 2255, and that I repudiate the positions expressed in

> my pro se letters to the Court and my statements to the Court on August 6, 2004, asking to drop my appeal of my conviction and sentence.
>
> My earlier decisions were made before consulting with my attorneys and without understanding what I was doing. I therefore withdraw my request to drop my appeals.

Notice of Defendant's Withdrawal of his Request to Waive His Appeal, signed August 17, 2004. The fact that Mr. Paul has re-asserted his right to proceed on the merits of his motion under 28 U.S.C. sec. 2255 renders the issue of waiver moot, and ends the inquiry into whether he is competent to waive or whether he previously made a knowing, voluntary and intelligent waiver of his right to challenge his conviction and sentence. In such circumstances, there is no longer a case or controversy under Article III, Section 2, of the Constitution. *See e.g. United States v. Wisconsin*, 771 F.2d 244, 245-246 (7th Cir. 1985) (In an election case where appellant already complied with the district court judgment in full by counting absentee ballots, appeal dismissed as moot.); *Holloway v. United States*, 789 F.2d 1372, 1373-1374 (9th Cir. 1986) (where appellant failed to seek a stay of the judgment in a tax case and judgment was enforced by sale of appellant's property for delinquent taxes, appeal dismissed as moot); *Office of Thrift Supervision v. Dobbs*, 931 F.2d 956 (D.C. Cir. 1991). (Appellant's compliance

with an administrative subpoena whose validity was the subject of the appeal renders appeal moot).

This is Mr. Paul's first federal habeas petition; regardless of previous attempts to submit to execution, he is entitled as a matter of law to proceed to judgment on this motion. In similar circumstances, the Supreme Court overturned a federal district court order dismissing a habeas petition filed by a condemned prisoner who had previously vacillated on whether to challenge his death sentence. The Court stated, "Dismissal of a first federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." *Lonchar v. Thomas*, 517 U.S. 314, 324 (1996). The law imposes no further burden on Mr. Paul at this juncture; this Court must proceed with the litigation of Mr. Paul's motion for relief from his conviction and sentence.

## B. THE RECORD IN THIS CASE DOES NOT SUPPORT A VALID WAIVER BY MR. PAUL OF HIS RIGHT TO PROCEED

As noted above, counsel for Mr. Paul believe that the issue of waiver is no longer before the Court. However, counsel offer the Court the following observations on the adequacy of "waiver" proceedings conducted thus far. "Defendants may waive their remedies if they have the capacity to appreciate their

position and make a rational decision, and if they do not suffer from a mental disease, disorder, or defect that may substantially affect this capacity." *Smith v. Armontrout,* 865 F.2d 1502, 1506 (8th Cir. 1988) (*en banc*); *see Rees v. Peyton*, 384 U.S. 312, 314, 16 L. Ed. 2d 583, 86 S. Ct. 1505 (1966) (*per curiam*).[1] Even if a prisoner attempting to succumb to his execution is free of mental disease, the inquiry is not over; "Supreme Court jurisprudence nonetheless mandates that courts indulge every reasonable presumption against waiver of fundamental constitutional rights." *Id.* at 329, *citing Hodges v. Easton*, 106 U.S. 408, 412 (1882). *Accord, Johnson v. Zerbst*, 304 U.S. 458 (1938). In this case, counsel for Mr. Paul believe that he does not understand the magnitude of his decision.

Each of Mr. Paul's counsel advised the Court of their dilemma in proceeding ethically on this matter. Mr. O'Brien advised the Court:

> [Mr. Paul] expressed to the Court a sense of hopelessness about his case that his attorneys don't share. We believe that he has a strong case to present to the Court, that he has a strong likelihood that if he were to pursue his 2255 petition that he would prevail, that he

[1] The Fifth Circuit has also observed that "there is a presumption that psychiatric and other medical examinations will be included in the decision making process." *Mata v. Johnson*, 210 F.3d 324, 328 (Fifth Cir. 2000). "Under the *Rees* standard, the petitioners must present the medical opinion of qualified experts based upon 'sufficient opportunity for proper psychiatric and psychological evaluation.'" *Groseclose ex rel. Harries v. Dutton*, 594 F.Supp. 949, 953 (D.C.Tenn. 1984).

> could get relief from his conviction and sentence, that he did not get a fair trial, that further proceedings would result in relief, and he is not open to hearing about it. He's not considering all of his options. He's not consulted with family or loved ones or anyone about this decision, that there – there are many things about his circumstances that reflect that what he is doing is not the product of a competent individual making a knowing and voluntary and intelligent decision.

Tr. 41-42. Mr. McGlasson echoed Mr. O'Brien's concerns, explaining to the Court the difficulty of adjudicating this issue while counsel's hands are tied by the privilege. *See* Tr. 55. Counsel's precarious position is evidenced in the Court's response to Mr. McGlasson's statement, which suggests the Court believed that Mr. McGlasson may have already crossed the line of professional ethics:

> The Court: Why is that not privileged? Mr. McGlasson, why is that, in and of itself, not privileged?
>
> Mr. McGlasson: Well, it could be. I feel the need –
>
> The Court: Well, I think it might be.
>
> Mr. McGlasson: –to make this record.
>
> The Court: I think it might be if he's telling you to specifically not disclose it and you do it. My question is why?

*Id.*

An assessment of the validity of a waiver of constitutional rights is made on

the totality of circumstances, "including the background, experience and conduct of the accused." *Young v. Lockhart*, 892 F.2d 1348, 1351 (8th Cir. 1989). That cannot happen here because counsel's hands are tied by the privilege. Therefore, such a waiver cannot be found on the record in this case because "the ultimate question of whether there has been a valid waiver of the right to counsel is not the trial court's advice, but rather the defendant's understanding," *United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir. 1995).

### C. THIS COURT SHOULD HEAR THE MERITS OF THIS CASE, AND IGNORE PAST AND FUTURE ATTEMPTS BY MR. PAUL TO WAIVE HIS APPEAL.

This is the second time in seven months that Mr. Paul has written *pro se* letters to the Court asking that his appeals be dropped, and then shortly thereafter, upon consultation with counsel, retracted his request. In neither instance did he first consult with counsel prior to his request; in both instances he has withdrawn his request. Beneath the surface of his communications are strong, ambivalent feelings. On the one hand, he believes that he deserves freedom because he did not kill Sherman Williams, and because he did not receive a fair trial. On the other hand, his attempted waivers appear to be motivated by a sense of hopelessness about his situation–that the Court has prejudged the case, that he is destined to live out his life under conditions that he finds insufferable, and that

nothing he or his attorneys can do will change his plight. Counsel do not believe that Mr. Paul's vacillation on the pursuit of his appeal is intended to antagonize the Court or manipulate proceedings. To the contrary, the issue would not have arisen if Mr. Paul reasonably perceived that he was being treated fairly or humanely.

While the Court may experience frustration at Mr. Paul's ambivalence, the wise course of action is to proceed with the merits of Mr. Paul's motion. "[C]easeless changes of heart" are not uncommon in capital cases. *St. Pierre v. Cowan*, 217 F.3d 939, 949 (7th Cir. 2000), after remand, *St. Pierre v. Walls*, 297 F.3d 617 (7th Cir. 2002). One could not be "unsympathetic to the predicament" in which this Court has found itself in the face of Mr. Paul's "ceaseless changes of heart." *Id.* But, in cases like this one, "not only the defendant but society as a whole has a particularly strong interest in the regularity of the proceedings that are followed; there is no un-doing a sentence of death once it is carried out. These proceedings will go forward more quickly, and they will conclude in a result recognized by all as legitimate, if the district courts follow the presumption Judge Arnold [in *Smith v. Armontrout*, 865 F.2d 1502 (8th Cir. 1988)] adopted and take a retraction of a waiver as the final word." *St. Pierre*, 217 F.3d at 950. The most fair and reliable course of action for the Court would be to give effect to the position

of Mr. Paul on this issue which is most reliable, i.e., the decision that he reaches after consulting with qualified legal counsel. This Court should disregard Mr. Paul's *pro se* letters, and hear the merits of Mr. Paul's motion, which he has filed after consultation with counsel.

WHEREFORE, for the foregoing reasons, petitioner moves this Court to:

a) Enter an order terminating proceedings relating to Mr. Paul's *pro se* attempt to waive his postconviction motion;

b) Enter its order allowing Mr. Paul to proceed *ex parte* on his request for expert investigative services and for access to Mr. Paul by mental health experts;

c) Enter its order authorizing the requested access and expenses;

d) Grant such further relief as the Court deems appropriate.

Respectfully submitted,

ROBERT L. MCGLASSON
Georgia Bar No. 492638
Federal Defender Program, Inc.
100 Peachtree St. NW, Suite 200
Atlanta, GA 30303
(404) 688-7530

SEAN D. O'BRIEN, MO Bar #30116
305 E. 63rd Street
Kansas City, MO 64113
(816) 363-2795

Attorneys for Mr. Paul

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion has been served upon counsel for respondent by sending a copy of same *via* first class U.S. Mail to:

Mr. Steven N. Snyder, Esq.
Assistant U.S. Attorney
P.O. Box 1524
Fort Smith, AR 72901

Ms. Margaret P. Griffey, Esq.
Chief, Capital Case Unit
Criminal Division
U.S. Department of Justice
Room 6140, Patrick Henry Bldg.
601 D. Street, N.W.
Washington, D.C. 20530

This 1st day of September, 2004.

Sean D. O'Brien