IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

U.S. DISTRICT COURT WESTERN DISTRICT ARKANSAS FILED FEB 1 4 2005 CHRIS R. JOHNSON, CLERK BY DEPUTY CLERK

UNITED STATES OF AMERICA, )
)
Respondent, )
)
v. ) CRIMINAL NO. 96-60022-001
)
JEFFERY WILLIAM PAUL, )
)
Petitioner. )

**MOTION TO RECONSIDER MEMORANDUM AND ORDERS, OR IN THE ALTERNATIVE TO VACATE, SET ASIDE OR CORRECT MEMORANDUM AND ORDER DENYING RELIEF PURSUANT TO RULE 59(E) AND RULE 60(B)**

Comes now Petitioner, by counsel, and moves this Court to vacate, set aside or correct its memorandum and order denying relief. In support of his motion, Petitioner states:

1. This Court on January 31, 2005, filed its Memorandum and Order denying Mr. Paul's motion for relief pursuant to 28 U.S.C. § 2255 without a hearing, without granting leave to conduct discovery, without granting mental health experts access to Mr. Paul in order to assess his condition, and without providing Mr. Paul, who is indigent, funds to investigate his claims. A judgment set forth on a separate document as required by Federal Rules of Civil Procedure 58(a)(1) has not yet been filed. Prior to Judgment, this Court has complete discretion to vacate, set aside or

329

amend its Memorandum and Order. *See* Rule 59(d).

2. Contemporaneously with its Memorandum and Order denying relief, this Court denied Petitioner's motion to proceed ex parte on his Request for Access to Mr. Paul and for Funds to Investigate. On June 21, 2004, this Court denied Petitioner's request for leave to conduct discovery.

3. If this Court interprets its order as in compliance with the separate Judgment as provided in Rule 58, Petitioner asks that this motion be considered a motion to vacate, set aside or correct its Memorandum, Order and Judgment pursuant to the standards set forth in Rules 59(e) and 60(b). A court may alter or amend its judgment if, among other things, the Court has made a mistake of law or fact. *See e.g., Deutsch v. Burlington Northern R. Co.*, 983 F.2d 741, 744 (7th Cir. 1992). A district court's failure to notice or consider arguments or authorities that justify relief also constitutes an appropriate ground to grant a Rule 59(e) motion if these failures affected the correctness of the court's decision. *See e.g., Hicks v. Town of Hudson*, 390 F.2d 84, 87-88 (10th Cir. 1967). Both of these settled grounds for granting 59(e) relief exist in this case. This Court's judgment and order denying habeas relief ignored or overlooked significant legal and factual issues, as discussed in further detail below.

4. Rule 60(b) also allows this Court to vacate, set aside or correct its Memorandum and Order for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59((b);

(3) fraud (whether heretofore designated intrinsic or extrinsic), misrepresentation, or other misconduct of the adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment up which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

3. The rulings of the Court denying Mr. Paul discovery, access to mental health experts and funds for investigation have denied Mr. Paul a fair opportunity to develop facts and claims in support of his Motion for Relief, in violation of 21 U.S.C. § 848(q)(9), and the Due Process Clause. *Ake v. Oklahoma*, 470 U.S. 68 (1985).

4. Rule 59(c) authorizes the filing of affidavits with this motion. Submitted herewith are declarations of witnesses who would testify in support of Mr. Paul's claims for relief, including:

**Zach Dryden**, an artist who was a childhood friend of Petitioner's;

**Tena Frances**, a mitigation specialist who was engaged by trial counsel but

not allowed to finish her investigation;

**Dr. Seymour Halleck**, a psychiatrist who has consulted with counsel and spoken with Petitioner;

**Trinity Ingle**, Petitioner's co-defendant, who shot Sherman Williams in spite of Mr. Paul's attempt to prevent the killing, and threatened to kill Mr. Paul;

**Richard McCaslin**, a close friend of Jeff's during childhood and at the time of trial;

**Heather Miller**, former girlfriend of Jason Paul and a close friend of Jeff's during childhood and at the time of trial;

**Hubert Massey**, Jeff's maternal grandfather;

**James Massey**, Jeff's maternal uncle;

**Martha Massey**, Jeff's maternal grandmother;

**Paula Paul**, Petitioner's mother who testified at trial but was not asked about many important aspects of Jeff's background and mental health history;

**Michael Roberson,** a Garland County Deputy Sheriff who knew Jeff as a child and lived in the Paul household for brief periods of time;

**Dr. Anthony Semone**, a psychologist for the defense at trial who did not testify but provided information regarding Mr. Paul's mental competence to stand trial;

**Susie Teague**, the mother of Sarah Bankhead and Heather Miller who had substantial contact with Jeff.[1]

These witnesses would have been available to testify at Jeff Paul's trial that he was physically and mentally abused as a child, that mental illness runs in his family, that he exhibited signs of mental illness well before his involvement in circumstances surrounding the death of Sherman Williams, that he does not have a violent character, that he was not an active participant in Mr. Williams's death and that he in fact tried to prevent it, that he may have been mentally incompetent at the time of this trial, and that there are substantial reasons to spare his life. A number of issues in this case are inextricably intertwined with Mr. Paul's social and developmental history, his character, and his emotional and mental condition. These issues include:

(a) whether trial counsel were ineffective for failing to conduct an adequate investigation into Mr. Paul's background and mental health for purposes of competently litigating Mr. Paul's state of mind at the time of the alleged offense, his competence to proceed, and the existence of mitigating circumstances for the penalty phase of trial (Claim XXVI);

---

[1] With respect to most of the listed witnesses Petitioner is filing original, signed declarations. Due to time pressures and technological glitches, some have been filed as faxed or scanned copies; others have been filed as unsigned but approved as is by the witness. Petitioner intends to file the original signed copies of each of these as soon as they are received by the undersigned.

(b) whether Mr. Paul was deprived of his right to due process of law because he was or became incompetent to proceed during his trial, and whether trial counsel were ineffective with respect to that issue (Claims XXI, XXII, XXVI);

(c) whether Mr. Paul's Eighth Amendment protection from cruel and unusual punishment was violated by the jury's failure to unanimously find that his youth constitutes a mitigating factor (Claim XII, XIV);

(d) Whether the Government based its decision to seek the death penalty against Mr. Paul on false information as to the nature and extent of Mr. Paul's role in the crime, and whether the jury was misled by the evidence and by the Government's advocacy of inconsistent positions in the Ingle and Paul trials. [Claims I, VI, VIII, IX, XI, XII, XXIV)

5. Counsel for Mr. Paul explained in the Motion for Relief Pursuant to 28 U.S.C. § 2255 and Rule 33 of the Federal Rules of Criminal Procedure that there is a necessity for further fact development in this case, and further explained that constraints imposed by the lack of pre-petition discovery, the absence of co-counsel and other constraints impaired his ability to raise all known claims for relief, and therefore pled his claims for relief in good faith, based upon information and belief. *See* Motion for New Trial, pp. 13-14.

6. This Court's Orders denying Mr. Paul access to mental health examiners, leave to conduct discovery, and funds to investigative his case, effectively preclude him from developing facts in support of his claims. These requests included funds for a mitigation specialist to interview virtually all of the above-referenced witnesses and many more.

7. Counsel have worked diligently to assert Mr. Paul's constitutional claims in support of his motion for relief, and have attempted to obtain the resources which are reasonably necessary to do so. In recognition of the need for adequate resources to ensure fair and reliable post-conviction adjudications in complex capital cases, Congress requires that federal courts authorize funds that are reasonably necessary to issues cognizable under 28 U.S.C. § 2255:

> In any post conviction proceeding under section 2254 or 2255 of title 28 seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services *shall be entitled* to the appointment of one or more attorneys *and the furnishing of such other services* in accordance with paragraphs (5), (6), (7), (8), and (9).

21 U.S.C. § 848 (q)(4)(B) (emphasis added). In determining Congressional intent of this section, the Supreme Court found that the services of investigators and experts may be critical in researching and identifying possible claims for relief in habeas

corpus proceedings challenging a sentence of death. *McFarland v. Scott*, 512 U.S. 849, 855 (1994). Thus, "[E]stablished habeas corpus and death penalty precedent suggests that Congress intended to provide prisoners with 'all resources needed to discover, plead, develop, and present evidence determinative of their "colorable" constitutional claims.'" *Patrick v. Johnson*, 48 F. Supp. 2d 645, 646 (N.D. Tex., 1999). This Court's order of January 31, 2005, denying Mr. Paul's Motion to Proceed Ex Parte on his Request for Access and Funds, and its Order of January 31, 2005, denying Mr. Paul's Ex Parte Motion for Access and Motion for Funds, overlook the law conferring upon a capital habeas petitioner the right to reasonably necessary resources to investigate and present his claims for relief.

8. At a conference in this matter conducted in August of 2003, a transcript of which has not yet been made available to the undersigned, counsel for Mr. Paul urged this Court to grant an evidentiary hearing in support of his claims. Counsel recalls that counsel for the Government acknowledged the advisability of conducting a hearing, at least with respect to Mr: Paul's claim of ineffective assistance of trial counsel. The denial of relief in this matter without giving Mr. Paul reasonably necessary resources or an opportunity for an evidentiary hearing or other factual development overlooks material matters of law, including *Jamison v. Lockhart*, 975 F.2d 1377 (8th Cir. Sept. 24, 1992), *Meeks v. Singletary*, 963 F.2d 316 (11th Cir.

1992); *Houston v. Lockhart*, 982 F.2d 1246 (8th Cir. 1992) (en banc).

9. The Court's Memorandum and contemporaneous Orders denying Mr. Paul's Motion for Relief without a hearing, without granting discovery, without granting access to Mr. Paul by mental health examiners, and without funds for investigation, is inconsistent with the standard mandated by the Supreme Court for the evaluation of claims of ineffective assistance of counsel in capital cases. The Supreme Court recently described the use of a forensic social worker to prepare a social history report as "standard practice" in capital cases, *Wiggins v. Smith*, 539 U.S. 510, 534 (2003), and was critical of ineffective trial counsel who "chose not to commission such a report." Id. The Court elaborated:

> Counsel's conduct similarly fell short of the standards for capital defense work articulated by the American Bar Association (ABA)--standards to which we long have referred as "guides to determining what is reasonable." *Strickland*, supra, at 688, 80 L Ed 2d 674, 104 S Ct. 2052; *Williams v. Taylor, supra*, at 396, 146 L Ed 2d 389, 120 S Ct. 1495. The ABA Guidelines provide that investigations into mitigating evidence "should comprise efforts to discover *all reasonably available mitigating evidence* and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11.4.1(C), p 93 (1989) (emphasis added). Despite these well-defined norms, however, counsel abandoned their investigation of petitioner's background after having acquired only rudimentary knowledge of his history from a narrow set of sources. Cf. id., 11.8.6, p 133 (noting that

> among the topics counsel should consider presenting are medical history, educational history, employment and training history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences) (emphasis added); 1 ABA Standards for Criminal Justice 4-4.1, commentary, p 4-55 ("The lawyer also has a substantial and important role to perform in raising mitigating factors both to the prosecutor initially and to the court at sentencing. . . . *Investigation is essential to fulfillment of these functions*").

*Id.* at 524-25 (Court's emphasis). A reasonable investigation in this case would show that Mr. Paul "has the kind of troubled history we have declared relevant to assessing a defendant's moral culpability." *Wiggins* at 535 (citing *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989)) ("'Evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background . . . may be less culpable than defendants who have no such excuse'"). The jury that sentenced Mr. Paul to death was not provided with the wealth of such evidence that was available had counsel at trial investigated, developed and presented it, and had this Court provided trial counsel with the necessary resources to do so.

WHEREFORE, for the foregoing reasons, Counsel for Mr. Paul respectfully pray that this Court:

A) Vacate its Memorandum and Order of January 31, 2005, denying habeas

corpus relief;

B) Vacate its Order of January 31, 2005, denying Petitioner's Motion to Proceed Ex Parte on Request for Access to Mr. Paul and for Funds to Investigate, and enter a new order granting the same;

C) Vacate its Order of January 31, 2005, denying Petitioner's ex parte Request for Access to Mr. Paul and for Funds to Investigate, and enter a new order granting the same;

D) Vacate its Order of June 21. 2004, denying Petitioner's Motion for Leave to Conduct Discovery, and enter a new order granting the same;

E) Grant Petitioner an evidentiary hearing on the merits of his claims; and

F) Order such further relief as the Court deems just and equitable.

Undersigned counsel reserves the right to supplement this Motion should it become necessary.

This 12th day of February, 2005.

Respectfully submitted,

ROBERT L. MCGLASSON
Federal Defender Program, Inc.

100 Peachtree St. NW, Suite 1700
Atlanta, GA 30303
404-688-7530

Sean D. O'Brien by RLM w/express permission
SEAN D. O'BRIEN, MO Bar #30116
305 E. 63rd Street
Kansas City, MO 64113
816-363-2795

# CERTIFICATE OF SERVICE

I, Robert L. McGlasson, do hereby certify that a true and correct copy of the foregoing Motion to Reconsider Memorandum and Orders, or in the Alternative to Vacate, Set Aside or Correct Memorandum and Order Denying Relief Pursuant to Rule 59(e) and Rule 60(b), and the Exhibits in Support thereof have been served upon counsel for respondent by sending a copy of same via U.S. mail to:

Ms. Margaret P. Griffey
U.S. Department of Justice
Rm 6140
Patrick Henry Building
601 D Street N.W.
Washington, D.C. 20530

Mr. Steve Snyder
Assistant U.S. Attorney
P O Box 1524
Fort Smith, AR 72901

This the 12th day of February, 2005.

Robert L. McGlasson