**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**HOT SPRINGS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 96-60022-001** |
| | ) | |
| **JEFFERY WILLIAM PAUL,** | ) | |
| | ) | |
| **Petitioner.** | ) | |

**SECOND RENEWED MOTION TO DISQUALIFY**
**THE HONORABLE JIMM LARRY HENDREN**

Jeffery Paul, the petitioner herein, by counsel, respectfully moves this Court to disqualify itself from presiding over or ruling upon Mr. Paul's Application for Certificate of Appealability or any further issues in this matter. For his motion, Mr. Paul states:

1. On two previous occasions, counsel for Mr. Paul have respectfully moved this Court to recuse itself from presiding over Mr. Paul's Motion for New Trial Pursuant to 28 U.S.C. Sec. 2255. The first such motion was filed January 23, 2004, and was supported by affidavits of witnesses to the Court's statements and display of anger and disapproval of the fact that the prosecution might waive the death penalty in this case. That motion was summarily denied by the Court on February 26, 2004, but counsel for Mr. Paul renewed the motion on August 5,

2004, when they learned that Assistant United States Attorney Steve Snyder and Mr. Brad Shoemaker, a staff member at the United States Penitentiary had *ex parte* conversations with Ms. Christy Comstock, the Court's clerk, in which they communicated information to her about Mr. Paul and another prisoner, David Hammer, suggesting that Mr. Paul had improper motives for expressing the desire to waive his appeals, and otherwise attempted to poison the clerk's, and presumably the Court's, mind against Mr. Paul. Without permitting any inquiry, discovery, or hearing on the underlying facts, the Court orally denied the renewed motion on August 6, 2004. The allegations of Mr. Paul's original Motion to Disqualify the Honorable Jimm Larry Hendren and Mr. Paul's Renewed Motion to Disqualify the Honorable Jimm Larry Hendren are hereby renewed and incorporated by reference as though fully set out herein.

2. Contemporaneously with the Renewed Motion to Disqualify the Honorable Jimm Larry Hendren, counsel for Mr. Paul moved to Disqualify the United States Attorney and the Department of Justice based on Mr. Snyder's and Mr. Shoemaker's conduct. On August 6, 2004, the Court summarily denied Mr. Paul's motion without making any further inquiry or permitting factual development of the issue.

3. In each of the above-referenced motions, counsel for Mr. Paul requested

an investigation, discovery, and an opportunity to be heard on his motion after all the facts could be ascertained. The summary fashion in which the Court disposed of each of the three motions without permitting any factual development or hearing only increases the concern that any reasonably objective observer would have about the Court's apparent lack of neutrality in these proceedings.

4. Counsel for Mr. Paul recently received a copy of a letter addressed directly to this Court by Mr. H. Marshall Garret, counsel to the U.S. Department of Justice Office of Professional Responsibility, dated August 17, and appended hereto as Exhibit A, requesting a personal interview with the Court about circumstances pertaining to Mr. Paul's Renewed Motion to Disqualify the Honorable Jimm Larry Hendren and his Motion to Disqualify the United State's Attorney. Mr. Garret wrote:

> We are investigating the conduct of Assistant United States Attorney Steven N. Snyder in connection with his communication, on or about July 28, 2004, with your law clerk, Courtney Gilbert, concerning a matter then pending before the court in the case of *Jeffrey William Paul v. United States* (Crim. No. 6:96CR60022-001). We would appreciate the opportunity to discuss the matter with you and to interview Ms. Gilbert as well concerning her connections with AUSA Snyder.

Exhibit A, p. 1. Mr. Marshall further advises the Court, "We would appreciate the

opportunity to discuss this matter with you *so that we may have the most complete and accurate information possible*." *Id.*, p. 2 (emphasis added). Mr. Marshall's desire to know all the facts about the improper *ex parte* communications between the prosecution and the Court's staff echoes the request of Mr. Paul, whose life hangs in the balance in these proceedings, for an adequate inquiry into this matter prior to any further proceedings.

5. Mr. Marshall's letter was obviously written on the erroneous assumption that there are no further issues pending before this Court. However, under Rule 22, Mr. Paul's application for a Certificate of Appealability must be presented in the first instance to a district court judge. An important issue therefore remains to be decided in spite of the entry of a judgment, the denial of Mr. Paul's post-judgment motion, and the filing of Mr. Paul's Notice of Appeal.

6. Mr. Marshall's letter highlights several issues, and warrants the Court's recusal, because it makes clear that this Court is, at a minimum, a witness to the misconduct of the Assistance United States Attorney in this case, and possibly a participant in ex parte communications with the government.

7. In addition, Mr. Marshall's letter raises the question of whether the Court's response to the improper communication was appropriate. Rather than allow Mr. Paul's counsel to discover the nature and extent of the *ex parte* attempt

to influence the Court, Judge Hendren hastily white-washed the event, writing in its letter to the parties of July 28, 2004, that the Court "will not, in any way, consider the information conveyed to its staff by either Mr. Snyder or Mr. Shoemaker in connection with its consideration of Mr. Paul's case." Letter of July 28, 2004, at p. 2. As noted in Mr. Paul's Renewed Motion to Disqualify the Court, the improper communications were testimonial in nature, focused entirely upon factual issues pending before the Court, and included opinions adverse to Mr. Paul of Mr. Snyder and Mr. Shoemaker, who would reasonably be perceived as a witness hostile to Mr. Paul. Nevertheless, the Court gratuitously wrote in its letter of July 28 that it "has no reason to believe that either communication was intended to improperly influence the Court" and that it "emphatically states that it will not be so influenced by them in any manner." *Id.* at 3. As with so many other issues in the case, the Court determined the issue without giving Mr. Paul's counsel notice of the issue and a fair opportunity to address it.

8. Mr. Paul's request for Certificate of Appealability includes the issues arising from the Court's expressions of bias against him, the improper ex parte communications between the Court and opposing counsel, and the Court's refusal to permit investigation or discovery or conduct an evidentiary hearing prior to siding with the government on those issues.

9. Mr. Paul raised a number of issues in his motion for relief from his conviction and sentence of death which raise instances of prosecutorial misconduct, including the prosecutor's misleading the defense, the jury and the Court about whether any of its witnesses expected to receive consideration for their testimony. The Court ruled against Mr. Paul on these claims without granting discovery, and without conducting an evidentiary hearing, just as he denied the opportunity for factual development of the misconduct of the AUSA.

10. A reasonable person in Mr. Paul's position would conclude from the Court's eagerness to side with the government without an adequate investigation that the Court is not impartial in this matter. After the Court's initial extrajudicial expressions of bias to Ms. Compton, described in her affidavit submitted with Mr. Paul's original Motion to Disqualify, the Court made a number of decisions and engaged in conduct consistent with his expressions of bias and prejudice and pre-disposition to steer the proceedings toward a conviction and sentence of death, including, but not limited to:

a. The Court conducted voir dire in a manner that impaired Mr. Paul's ability to determine the exposure of the panel to extensive and prejudicial pretrial publicity, and precluded the defense from conducting a reasonable inquiry into jurors' views on the death

penalty (See Claim 3);

b. The Court failed to conduct an inquiry into Mr. Paul's competence when it witnessed Mr. Paul engage in bizarre, irrational and self-defeating behavior in the presence of the jury during his trial (See Claims 21 and 22);

c. The Court failed to remedy or prevent numerous instances of government misconduct before and during Mr. Paul's trial. (See Claims 24 and 27)

d. After patiently and sympathetically listening to the government's extensive presentation of victim character and victim impact evidence, having nothing to do with Mr. Paul's crime or culpability, the Court impatiently and in the presence of the jury urged defense counsel, during the testimony of their one and only defense witness, to hurry along their presentation, and sua sponte curtailing inquiry which the court pronounced irrelevant.

e. The Court denied reasonable requests for discovery, co-counsel, funds for a mitigation specialist to investigate meritorious issues, access to Mr. Paul by mental health experts for the purpose of assessing his mental condition which lay at the heart of many issues

in this case, and thwarted every attempt by counsel for Mr. Paul to develop the facts in support of his section 2255 motion, his motion to disqualify the court, and his motion to disqualify the Department of Justice.

11. A reasonable litigant would have further concerns about Judge Hendren's impartiality herein because there are a number of claims which are directed toward his actions, as well as claims to which he is a witness, including:

a. Mr. Paul's claim in his section 2255 motion that Judge Hendren is biased against him, as well as his renewed claims based on events that transpired or came to light during section 2255 proceedings. (See Claim 8);

b. Mr. Paul's claim that his attorneys deprived him of his right to testify in his behalf. Newspaper reporter Steven Mross heard Mr. Paul tell the Court that he wanted to testify in his defense, but "my lawyers wouldn't let me." The trial transcript does not reflect that statement, but according to Mr. Mross the Court was present when the statement was made. The Court denied Mr. Paul's request for discovery and factual development of this claim. (See Claim 19);

c. Upon information and belief, counsel for Mr. Paul alleged that the

Court received *ex parte* information from the United States Marshall concerning Mr. Paul's mental condition prior to the trial. The Court is a potential witness to this claim, but denied Mr. Paul's reasonable request for discovery or other factual development of the issue. (See Claim 21);

d. Mr. Paul was mentally incompetent before and during his trial, and exhibited symptoms of his deteriorating mental condition during the trial in the presence of the parties and the Court. The Court denied discovery, investigative funds, access to Mr. Paul by mental health experts, or any other opportunity to factually develop this issue.(See Claim 21)

e. This Court violated Mr. Paul's right to due process of law when it observed his deteriorating mental condition during trial but failed to conduct any inquiry whatsoever into his competence. Again, the Court denied discovery, investigative funds, access to Mr. Paul by mental health experts, or any other opportunity to factually develop this issue. (See Claim 22);

f. Mr. Paul was denied his right to effective assistance of counsel throughout all phases of the pre-trial, trial and post-trial process, in

the same fashion as counsel who were found constitutionally ineffective by the United States Supreme Court in *Wiggins v. Smith*, 539 U.S. 510 (2003), and *Rompilla v. Beard*, ___ U.S. ___, 125 S. Ct. 2456 (2005). Once again, the Court denied discovery, investigative funds, access to Mr. Paul by mental health experts, or any other opportunity to factually develop this issue. (See Claim 26)

The Court is either the subject of or a potential witness to many of the facts and circumstances making up the factual basis of part or all of many of the above claims. Given his explicit expression of animosity toward Mr. Paul, his prejudgment of what sentence would be appropriate prior to hearing the government's evidence, and his role as the subject of, or witness to, many of the events integral to Mr. Paul's constitutional claims for relief, and his status as a witness and a subject of an ongoing Department of Justice investigation into official misconduct related directly to this case, it is highly inappropriate for Judge Hendren to act as the gatekeeper of Mr. Paul's right to present his claims to the Court of Appeals.

## SUGGESTIONS IN SUPPORT OF MOTION TO DISQUALIFY

## I. <u>STATUTES GOVERNING DISQUALIFICATION</u>

The circumstances set forth above trigger two statutes that govern the

disqualification of federal judges. Section 144 of Title 28 (Bias or Prejudice of Judge) provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending *has a personal bias or prejudice either against him or in favor of any adverse party*, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.[1]

(Emphasis supplied). The Court's judicial and extrajudicial expressions of bias against Mr. Paul and subsequent rulings and conduct consistent with the bias he expressed would cause any reasonable litigant to conclude that he is personally biased against Mr. Paul.

Section 455 of Title 28 (Disqualification of Justice, Judge, or Magistrate) provides in pertinent part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding *in which his impartiality might reasonably be questioned*.

---

[1] "The 10 day rule has been an anachronism since 1963, when Congress abolished formal terms of court for United States district courts. *See* 28 U.S.C. §138." *See Liteky v. United States*, 510 U.S. 540, 560 (1994) (Kennedy, J. concurring).

> (b) He shall also disqualify himself in the following circumstances:
>
> > (1) Where he has a personal bias or prejudice concerning a party, or *personal knowledge of disputed evidentiary facts concerning the proceeding*; . . .
> >
> > (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person: . . .
> >
> > > (iv) Is to the judge's knowledge likely to be a material witness in the proceeding. . . .

(Emphasis supplied). In addition to the many circumstances noted by Mr. Paul indicating that Judge Hendren's "impartiality might reasonably be questioned," Mr. Marshall's letter requires that the disqualification issue be reconsidered because it removes any question as to whether subsection (b)(1) applies in this case.

## II. <u>**RELEVANT CASE LAW PRINCIPLES**</u>

Section 144 and paragraph (b)(1) of §455 are virtually identical grounds for recusal. Section §455 is distinct from § 144 in that its provisions are applicable to all justices, judges and magistrates and places the obligation to identify the existence of those grounds upon the judge, rather than requiring recusal only in response to a party affidavit. *Liteky v. United States*, 510 U.S. 540, 548 (1994).

Judge Hendren's summary disposition of the two previous motions to

disqualify him is inconsistent with the operation of the statutes governing the issue. Once a motion to disqualify is filed under §144, the judge must pass on the sufficiency of the affidavit, but not the truth of the matter asserted. *See e.g., Henderson v. Dept. of Public Safety and Corrections*, 901 F.2d 1288, 1296 (5th Cir. 1990). A legally sufficient affidavit must be material and stated with particularity and the facts must be such that if true they would convince a reasonable person that a bias exists. *Id.* [2] Thus, "[i]t is the appearance of bias or partiality that matters here, not actual bias." *United States v. Tucker*, 78 F.3d 1313, 1324 (8th Cir. 1996), *citing United States v. Poludniak*, 657 F.2d 948, 954 (8th Cir. 1981), *cert. denied*, 455 U.S. 940 (1982).

The circumstances set forth herein, and in Mr. Paul's previous motions to disqualify Judge Hendren, comply in every material respect with the statutory standards. If, upon reading the declarations, Judge Hendren's "impartiality might reasonably be questioned," then recusal is required under 28 U.S.C. § 455. *Liljeberg v. Health Services. Acquisition Corp.*, 486 U.S. 847 (1988). "The

---

[2]While an "extrajudicial source" is the common basis for establishing disqualifying bias, it is not the exclusive reason a predisposition can be wrongful or inappropriate. *Litkey*, 510 U.S. at 551. "A favorable or unfavorable predisposition can also deserve to be characterized as 'bias' or 'prejudice' because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment." *Id.*

guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact." *Id.* at 869-870, *citing, Public Utilities Comm'n of D. C. v. Pollak*, 343 U.S. 451, 466-467 (1952) (Frankfurter, J., in chambers).

As a final note, counsel for Mr. Paul point out that death penalty cases are quite different from ordinary felony cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Because the judge's role under federal law literally gives him the power of life and death, recusal issues should be treated differently in death penalty cases. *See, e.g., Fla., Peek v. State*, 488 So.2d 52 (1986); *Isaacs v. State, Ga.*, 355 S.E.2d 644 (1987); *West v. State, Miss*., 519 So.2d 418 (1988); *State v. Vickers*, Ariz., 675 P.2d 710 (1983). Mr. Paul's life should not rest in the hands of a judge who is being asked to participate in a Department of Justice investigation into the conduct of the Court and opposing counsel.

WHEREFORE, for the foregoing reasons, counsel for Mr. Paul respectfully request that this Court disqualify itself from presiding over or deciding any further issues in this matter, including Mr. Paul's Application for Certificate of

Appealability, and enter such further order as is necessary to cause another Judge, unconnected with the judge, this case or any party thereto, to be assigned to here all issues that remain to be decided by a district court judge. In addition, and/or in the alternative, counsel for Mr. Paul requests that the Court grant him the discovery he has previously sought relative to this Motion prior to ruling, and/or permit the filing of supplemental pleadings regarding judicial disqualification once discovery has been completed.

Respectfully submitted,

*s:// Robert L. McGlasson*
ROBERT L. MCGLASSON
Ga. Bar #492638

Federal Defender Program, Inc.
100 Peachtree St. NW, Suite 200
Atlanta, Georgia 30303
(404) 688-7530

*s:// Sean D. O'Brien*

SEAN D. O'BRIEN, Mo. Bar #30116
305 E. 63rd Street
Kansas City, Missouri 64113
(816) 363-2795

**CERTIFICATE OF SERVICE**

I do hereby certify that I have served a copy of defendant's Second Renewed Motion to Disqualify the Honorable Jimm Larry Hendren by placing a copy of same in the U.S. mail, with proper postage affixed thereto, and addressing it to the following:

Mr. Steven N. Snyder, Esq.
Mr. Mark Webb, Esq.
Assistant U.S. Attorneys
P.O. Box 1524
Fort Smith, Arkansas 72901

Ms. Margaret P. Griffey, Esq.
Chief, Capital Case Unit
Criminal Division
U.S. Department of Justice
Room 6140, Patrick Henry Bldg.
601 D. Street, N.W.
Washington, D.C. 20530

This 25th day of August, 2005.

*s:// Sean D. O'Brien*
Sean D. O'Brien