**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HOT SPRINGS DIVISION**

**UNITED STATES OF AMERICA** **RESPONDENT**

**v.** **Crim. No. 6:96-CR-60022-TLB-BAB**
**Civil No. 6:13-CV-06014**

**JEFFERY WILLIAM PAUL** **MOVANT**

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255[1] (ECF No. 474) filed herein by **JEFFERY WILLIAM PAUL**, (hereinafter referred to as "Paul") an inmate currently confined at the Coleman II U.S. Penitentiary in Coleman, Florida. The Government has filed its Response. ECF No. 479. Paul filed a Reply. ECF No. 488. The Motion was referred for findings of fact, conclusions of law and recommendations for the disposition of the case.

## 1. Factual Background:[2]

On June 26, 1995, the body of eighty-two-year-old Sherman Williams was found by a hiker, under logs and rocks, with hands and ankles tightly bound by duct tape, in the Hot Springs National Park, Hot Springs Arkansas. The evidence introduced at trial showed that on June 22, 1995, Paul and an acquaintance, Trinity Ingle, followed Mr. Williams from downtown Hot

[1] Paul filed a *pro se* Motion on March 19, 2024. ECF No. 462. As discussed herein, the Court appointed counsel and ordered an Amended Motion filed. This Amended Motion, filed on August 29, 2024, is the operative pleading and will be referred to as "the Motion" or "the Amended Motion" herein.
[2] This summary is drawn from the Eighth Circuit's opinion affirming Mr. Paul's conviction. *See U.S. v. Paul*, 217 F.3d 989, 994-995 (8th Cir. 2000).

Springs, Arkansas, to a walking trail in Hot Springs National Park. Paul and Ingle robbed and beat Mr. Williams and then shot him in the head and shoulder. A piece of duct tape around Mr. Williams' neck was presumed to have once been around Mr. Williams' mouth. The coroner testified Mr. Williams' head was nearly detached from his spine and there was a large open wound at the right temple above the jaw. Further, a State of Arkansas medical examiner testified the body had gunshot wounds to the head and chest. The medical examiner testified Mr. Williams died as a result of the wound to the head.

FBI agents testified Mr. Williams' wallet was found in the park near his body. A few days later, Mr. Williams' vehicle was found in a remote area of the park. Trinity Ingle's latent fingerprint was recovered from inside of the vehicle.

Several of Paul's acquaintances testified Paul confessed his involvement in the crime to them. Each of these witnesses gave similar accounts of what Paul had told them about the offense. Chris Rogers testified that Paul said he and Ingle murdered an old man after following him into the park because he looked like an “easy target” to rob. Rogers testified that Paul stated when Williams resisted the robbery, they began beating him, including kicking him in the head hard enough to knock his eye out of its socket. Paul also told Rogers that because Williams was not yet dead following the beating, he shot him, and then Ingle shot him. Paul and Ingle then dragged the body into the woods and covered it up.

Other witnesses testified about Paul’s post-crime statements. Christine Lapaglia testified that Paul told her he had killed someone when he kicked him and broke his neck. Cindy Wallace testified that Paul told her he had a recurring dream about following an old man, taking his money, and beating him so severely his eye came out of the socket. Paul told Wallace the old man begged

for his life, but fearing he would talk, Paul shot him in the head. Dan Coughlin testified Paul said he and another Arkansas man had robbed an old man for his vehicle, then shot and killed him. Paul's brother also testified he saw Paul and Ingle driving a car which matched the description of Williams' car.

Paul also confessed to an FBI agent. Paul left Arkansas shortly after the murder and evaded authorities for a little more than one year. He was arrested in August 1996 and confessed his involvement in the crime to FBI Agent John La Voie. Paul's statement to La Voie was consistent with the accounts given by Paul's acquaintances, except Paul told La Voie that only Ingle had shot Williams.

On December 4, 1996, Paul was charged by Superceding Indictment with two counts of violation of Federal criminal law. ECF No. 86. Count 1 charged first degree murder of Sherman Williams in violation of 18 U.S.C. §1111(a). Count 2 charged use of a firearm, during the course of a robbery, resulting in the death of Sherman Williams in violation of 18 U.S.C. §924(c) and (i)(1). On January 27, 1997, the Government gave Notice of Intent to Seek the Death Penalty. ECF No. 124.

**2. <u>Procedural Background</u>**

**a. Trial.**

On June 23, 1997, in the United States District Court for the Western District of Arkansas, Paul was convicted on both counts of the Indictment. ECF Nos. 10, 233 and 234. He was convicted of murder in the first degree in violation of 18 U.S.C. §1111(a) for the killing of Mr. Williams in the Hot Springs National Park, Hot Springs, Arkansas. Murder in the first degree carried a possible sentence of "death or life imprisonment." 18 U.S.C. §1111(b). Paul was also

convicted of use of a firearm causing the death of Mr. Williams in violation of 18 U.S.C. §924(c). This count had a punishment range of death, or imprisonment for any term of years, or for life. 18 U.S.C. §924(i)(1).[3] Following a sentencing phase, Paul was sentenced to death on June 25, 1997. ECF No. 238.

**b. Direct Appeal.**

Paul appealed and on direct appeal he raised the following points:

a) the Government took inconsistent actions at his trial and at the co-defendant's trial by arguing that each of the two defendants actually killed the victim;

b) his rights under the Federal Death Penalty Act and the Constitution were violated because the jury failed to unanimously find and consider as a relevant mitigating factor that the co-defendant only received a life sentence;

c) the prosecution relied upon unadjudicated bad act evidence at trial and at sentencing in violation of his statutory and constitutional rights;

d) the government presented unnecessary and prejudicial testimony during the guilt phase of the trial; and

e) there was error in the prosecutor's closing argument.

On August 30, 2000, the United States Court of Appeals for the Eighth Circuit affirmed Paul's conviction and death sentence. *See United States v. Paul*, 217 F.3d 989 (8th Cir. 2000). A Petition for a Writ of Certiorari was denied on October 1, 2001. *See Paul v. United States*, 534 U.S. 829 (2001). A motion to rehear the denial of certiorari was denied on February 19, 2002. *See Paul v. United States*, 534 U.S. 1156 (2002).

**c. First Section 2255 Motion.**

Paul filed a Motion to Vacate, Set Aside or Correct Judgment pursuant to 28 U.S.C. § 2255

[3] Now codified at 18 U.S.C. §924(j)(1).

on December 17, 2002. ECF No. 271. He raised the following issues in his first § 2255 motion:

a) the Government relied on inconsistent theories at the separate trials of the two co-defendants which violated Paul's right to a fair trial and due process;

b) the Government's reliance on non-statutory aggravating factors to seek a death penalty constituted an improper delegation of legislative authority;

c) the trial Court erred in refusing to allow sequestered voir dire of individual prospective jurors and its rulings on challenges to prospective jurors for cause;

d) the Government improperly relied on unadjudicated offenses in both phases of the trial;

e) the Government's closing argument was improper in several respects;

f) the death penalty was improperly imposed as a result of passion and arbitrariness;

g) the trial Court erred in allowing victim impact evidence at the guilty innocence phase;

h) Paul was actually innocent of causing the death of Mr. Williams;

i) the Government improperly exercised its discretion to seek the death penalty;

j) the Federal Death Penalty Act was unconstitutional;

k) the jury erred in not finding his co-defendant's life sentence was mitigating factor for Paul;

l) the jury erred in not finding his age was mitigating factor for Paul;

m) the trial judge was biased against Paul;

n) the trial Court erred in its sentencing phase instructions to the jury;

o) the Government relied on improper aggravating factors at sentencing;

p) the trial Court erred in permitting the Government to rely on improper aggravating factors at sentencing;

q) the jury did make the required finding of intent;

r) Paul was deprived of his right to testify on his own behalf at trial;

s) *Paul was incompetent to stand trial*;

t) *the trial Court erred in not having a pre-trial competency hearing*;

u) the Government committed numerous instances of misconduct during the pre-trial, trial and post-trial process;

v) Paul was convicted and sentenced in violation of *Apprendi v. New Jersey* and *Ring v. Arizona*;

w) Paul was denied effective assistance of counsel through all phases of the pre-trial, trial and post-trial process; and

x) the cumulative effect of the foregoing errors resulted in an unfair and constitutionally defective trial.

The Court notes that two of the claims involve Paul's alleged incompetence.

This Court denied the motion in all its particulars on January 31, 2005. ECF No. 322. The Eighth Circuit remanded with instructions to reconsider in light of *Tiedeman v. Benson,* 122 F.3d 518 (8th Cir. 1997)(holding that District Courts have the authority under the Antiterrorism and Effective Death Penalty Act of 1996 to issue certificates of appealability but must state the issues the District Court found substantial). ECF No. 341. On October 26, 2005, this Court reconsidered Paul's claim as directed by the Eighth Circuit and denied his request for a Certificate of Appealability. ECF No. 345.

On January 25, 2007, the U.S. Court of Appeals for the Eighth Circuit granted a certificate of appealability regarding the following issues:

a) Whether trial counsel were ineffective for failing to investigate and present evidence of Paul's mental, medical and physical history?

> b) Whether trial counsel were ineffective for failing to investigate and assert Paul's incompetence to stand trial?
>
> c) Whether Paul has a constitutional right to competence during federal habeas corpus proceedings and, if so, whether that constitutional right was violated?

ECF No. 351. All three of the issues certified for appeal dealt with Paul's alleged incompetence. On July 22, 2008, the Eighth Circuit denied relief. *See Paul v. United States*, 534 F.3d 832 (8th Cir. 2008).

As to Paul's first claim, the Eighth Circuit, in considering whether trial counsel were ineffective in failing to investigate and present evidence of Paul's mental, medical and physical history, held as follows:

> Taking the record as a whole, therefore, we conclude that Paul's proffered evidence concerning his medical, mental, or physical history is insufficient to undermine confidence in the jury's verdict in the penalty phase. Accordingly, even assuming that Paul could show that the performance of trial counsel was constitutionally deficient, he has not established resulting prejudice.

*Id.* at 843.

Regarding the second claim accepted by the Eighth Circuit, whether trial counsel were ineffective for failing to investigate and assert Paul's lack of competence to stand trial, the Eighth Circuit first noted the trial Court granted counsel's motion for a psychiatric examination. *Id*. at 844. The result of an examination at the Mental Health Division at FCI Butner, North Carolina, found Paul suffered "antisocial personality disorder, but concluded he was not 'suffering from a mental disease or defect rendering him mentally incompetent' for purposes of trial." *Id*. Paul's own mitigation psychiatrist opined Paul was "not now able sufficiently to understand the charges against him," he was "unable to cooperate sufficiently with [counsel] in effectively assisting in his own defense," was "not now able at all to make a rational and informed decision with respect to

the plea arrangement offered by the U.S. Attorney," and was "at serious risk of being unable to control himself throughout the rigors of trial." *Id*. Based on this new report, Paul's trial counsel sought funding for a third psychiatric exam and the District Court again granted the motion. The third expert, however, reached a conclusion contrary to that of Paul's mitigation expert and opined that Paul was competent. *Id*. Following this third psychiatric opinion, Paul's counsel did not seek a competency hearing in the District Court, and the case proceeded to trial.

The Eighth Circuit held there were substantial reasons to believe trial counsel's performance was not constitutionally defective. *Id*. Further, the Court held that even if it assumed trial counsel's performance was defective, "Paul has not shown a reasonable probability that the district court would have found him incompetent to stand trial. Two psychiatric examinations conducted for the purpose of determining whether Paul was competent to stand trial concluded that he was competent." *Id*.

The third claim allowed by the Eighth Circuit pursuant to the certificate of appealability was whether Paul has a constitutional right to competence during the post-conviction proceedings. The cases cited by Paul relied on a "statutory" right to competency rather than a constitutional right to competence during post-conviction proceedings. The Court noted Paul now alleged his incompetence arose after his attempted suicide in November 2003. However, by the time of the attempted suicide in November 2003, Paul already had filed his 344–page *habeas corpus* motion and a 514–page, two-volume appendix on December 17, 2002. The government responded on June 2, 2003, and the court issued its decision based on those lengthy pleadings. To the extent counsel needed assistance from Paul in developing facts outside the record, that work was completed before November 2003 the asserted date of Paul's incompetence. The Eighth Circuit

did not rule on the precise issue of a right to be competent during a post-conviction proceeding holding that it did not need to so in this case. *Id*. at 848.

The Court also noted that shortly after the attempted suicide and after the District Court granted counsel's motion for a mental health professional to consult with Paul, the District Court received a handwritten letter from Paul, in which Paul asked, "to be declared competent to waive further appeals hindering the imposition of this sentence upon me." In this letter Paul further stated, "I do know that I am guilty of the crime which resulted in Mr. Williams (Sherman) untimely and unnatural death," and "I regret the pain caused by my robbing, kicking and incapacitating Mr. Williams." The letter concluded with "Please consider my appeals dropped." *Id.* Paul had several interactions with the District Court following this letter where he indicated his own competency. Discussing Paul's competency in January 2005, the District Court, found as follows:

> The Court has no reservations about petitioner's mental ability to determine whether he wishes to proceed with the appellate process. Based upon his letters to the Court and his conduct, conversation, and general demeanor during the video conference hearing, the Court believes petitioner was and is fully capable of determining whether he wants to proceed. That said, it follows that if petitioner be fully competent to determine that he wished to terminate the appellate process, he is also fully competent to change his mind—on advice of counsel—and determine that he wishes to proceed with that process. This is what petitioner has done and the Court agrees with both petitioner and respondent that the Court should proceed to a disposition of the pending petition without further delay.

ECF No. 322, p. 6. The Eighth Circuit agreed stating: "the [trial] court's finding here is adequately supported." 534 F.3d at 853. Ultimately, the Eighth Circuit affirmed the trial Court's denial of Paul's first Section 2255 motion. *Id*. at 854

Following the denial of Paul's first Section 2255 by the Eighth Circuit, Paul petitioned the

United States Supreme Court for writ of certiorari on February 20, 2009. The United States Supreme Court denied his petition on October 5, 2009. *See Paul v. United States*, 558 U.S. 828 (2009); and ECF No. 361.

**d. Second Section 2255 Motion**:

Paul, *pro se,* filed a second Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 on February 7, 2013. ECF No. 362. In this second Motion to Vacate, Set Aside or Correct Sentence he asserted the following claims:

> a) Actual innocence, in that he claims he did not commit "any actionable element" of the offense, as another person confessed to and was convicted of the crime for which Paul was convicted. (Paul refers here to his co-defendant who was convicted in a separate trial).
>
> b) Death sentence was unfairly applied to him, when the co-defendant and "actual perpetrator" of the murder was given a life sentence.
>
> c) Prosecutorial misconduct by presenting false testimony of the cause of death of the victim.

Paul acknowledged he had previously raised these three issues on either direct appeal or in the previous § 2255 proceeding. The Government responded and asserted the second Motion should be denied because (1) it was successive, and Paul has not received permission from the Eighth Circuit to file such Motion; and (2) the other relief requested was not available in a § 2255 proceeding. On June 17, 2013, the undersigned recommended the second Motion be denied as successive. ECF No. 382. Ten days later Paul, again *pro se*, filed a third Motion to Vacate Conviction and Sentence.

**e. Third Section 2255 Motion**:

On June 27, 2013, Paul filed his third Motion to Vacate. ECF No. 383. The Motion was

referred to the undersigned to make a recommendation regarding whether the Court should consider a *pro se* pleading filed by a litigant represented by counsel. ECF No. 389. On July 22, 2013, the undersigned recommended the Court not consider the *pro se* pleadings of Paul in this matter and further that his claims were successive and should be denied. ECF No. 390. On August 26, 2013, the District Court adopted the recommendation and denied the § 2255 motion as well as all of Paul's other pending *pro se* motions. ECF No. 392.

Notably during this same time period, the Eighth Circuit denied a request by Paul to file a successive § 2255 motion. ECF No. 393. On October 31, 2013, the Eighth Circuit denied Paul's motion for reconsideration of his request to file a successive motion. ECF No. 397.

**f. Petition for Writ of Mandamus**:

On April 9, 2014, Paul filed a Petition directly with the Eighth Circuit, seeking various remedies, including relief from his conviction and death sentence. *See In re: Jeffery Paul*, Cause No. 14-1832 (8th Cir. 2014), *see also* ECF No. 401-1. This Petition, designated a Petition for Writ of Mandamus by the Eighth Circuit, was denied on April 25, 2014. ECF No. 402. A request for rehearing *en banc* was denied on June 3, 2014. ECF No. 407.

**g. Fourth Section 2255 Motion**:

On June 13, 2016, Paul, through counsel, filed an Unopposed Motion to Lodge Section 2255 Motion Pending Ruling on Successor Application. ECF No. 434. With this Motion Paul sought leave to file a new Section 2255 Motion if the Eighth Circuit granted his pending application to file a successive motion. This Court granted this Unopposed Motion and allowed Paul to file his fourth Section 2255 motion, subject to subsequent Eighth Circuit approval. ECF Nos. 435 and 436. Notably the proposed successive Section 2255 Motion was based on the

Supreme Court decision in *Johnson v. United States*, 576 U.S. 591 (2015)(invalidating the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)). On August 5, 2016, the Eighth Circuit denied the application to file a successive motion (ECF No. 440) and this Court denied the Section 2255 Motion as moot (ECF No. 441) on August 10, 2014.

**g. Fifth Section 2255 Motion**:

On June 23, 2020, through Counsel, Paul filed his fifth motion pursuant to 28 U.S.C. § 2255. ECF No. 445. Again, Paul requested to be able to file this successive motion pending approval from the Eighth Circuit. The basis of the proposed motion was that pursuant to *United States v. Davis*, 588 U.S. 445 (2019), the residual clause of 18 U.S.C. §§ 924(c) and (i)(1) were invalid and could not support Paul's conviction and sentence. On September 15, 2021, this Court denied the Section 2255 because the Eighth Circuit had denied Paul's request to file a successive motion. ECF No. 449.

**h. The S.D. Indiana Motion for Habeas Relief**:

In early 2022, Paul filed a Motion for Habeas Corpus Relief in the Southern District of Indiana.[4] On August 22, 2022, the Honorable Jane Magnus-Stinson, District Judge, granted Paul's Motion in part. ECF No. 450, s*ee also, Paul v. Superintendent*, 2022 WL 3043526 (S.D. Indiana 2022). Paul raised three claims in the Motion for Habeas Corpus Relief: (a) he was actually innocent; (b) he suffers from a mental illness making him ineligible for the death penalty; and (3) his death penalty based on the 18 U.S.C. § 924(c) conviction should be vacated. Specifically, Judge Magnus-Stinson held as follows:

4 Paul was incarcerated at the United States Penitentiary in Terre Haute Indiana, located in the S.D. of Indiana at the time he filed this motion.

a. Paul failed to make a showing of actual innocence. This claim was denied.

b. Paul's current claim of mental illness was unripe as it pertains to actual imposition of the death penalty. Judge Magnus-Stinson noted that Paul "does not argue that his mental health at the time of his crime, or even at the time of trial, precluded a death sentence. Such a claim likely would be barred by § 2255(e)." This claim was found not ripe and was denied.

c. Paul was entitled to relief from his sentence because "robbery," as charged in his indictment and found by the jury, is not a crime of violence pursuant to" 18 U.S.C. § 924(c).

Judge Magnus-Stinson held that because Paul's § 924(c) conviction was predicated on an offense that is not criminalized by statute, the conviction should be vacated. Because the death penalty verdict by the jury against Paul did not specify which offense or offenses influenced its decision, Paul's death sentence was vacated. ECF No. 450 p. 16-17. Judge Magnus-Stinson vacated Paul's death sentence and ordered a "retrial on the penalty phase in the district of conviction." ECF No. 450 p. 17.

On September 30, 2022, the Government filed a notice of appeal with the United States Court of Appeals for the Seventh Circuit. On June 30, 2023, the Government moved to dismiss appeal and the Seventh Circuit Ordered the appeal voluntarily dismissed on July 5, 2023. ECF No. 452.

**i. The Resentencing**:

On August 2, 2023, United States District Judge Timothy L. Brooks, of this Court, appointed counsel to represent Paul in this District for any further proceedings consistent with the Order from the S.D. Indiana. ECF No. 453. Because his § 924(c) conviction had been vacated by Judge Magnus-Stinson's Order in the habeas proceeding in the S.D. of Indiana, Paul at this

point stood convicted solely of first-degree murder in violation of 18 U.S.C. §1111(a). On October 10, 2023, the Government filed its Withdrawal of Notice to Seek the Death Penalty and Notice of Intent Not to Seek the Death Penalty. ECF No. 458. The only punishments permissible under 18 U.S.C. §1111(b) are life imprisonment or death. Because the Government no longer sought the death penalty, on October 18, 2023, Judge Brooks sentenced Paul to life imprisonment, the only punishment available for first degree murder. ECF No. 459. As the only punishment available was life imprisonment, Judge Brooks conducted no hearing, took no evidence, and didn't require argument by counsel for either party. Neither the Government nor Paul requested a hearing, requested leave to present evidence or argument, or objected to Judge Brook's Amended Judgment.

**3. <u>Discussion</u>**

On March 19, 2024, Paul, *pro se*, filed his sixth motion pursuant to 28 U.S.C. § 2255. ECF No. 462. This Court ordered Paul to file no further *pro se* pleadings (ECF No. 461) and on April 11, 2024, entered an Order appointing current counsel to represent Paul in pursuing any remedy under 28 U.S. C. § 2255 (ECF No. 466). In the Order appointing counsel to represent Paul, the Court instructed counsel to file an Amended Motion to Modify, Correct or Vacate Sentence.

**a. Paul's *pro se* Motion (ECF No. 462)**:

Paul's *pro se* Motion was 8 pages with 38 pages of exhibits. Paul indicates initially he has attempted to pursue actual innocence claims on several occasions. He states the result of his resentencing by Judge Brooks in this Court leave him "imprisoned for life by way of INVOLUNTARY PLEA BARGAIN." ECF No. 462 p. 4. He also claims he should get an

evidentiary hearing on his actual innocence claims because the Government in the original trial "relied on material perjured testimony [and] coerced, false confessions." *Id*. at 5. He appears to raise an issue of trial counsel intentionally incriminating him and the Government commenting on the fact Paul made incriminating statements to several people prior to his trial. *Id.* at 6. Paul specifically requests his conviction be vacated and that he be released, that current counsel be re-appointed to represent him, and that his claims for damages, for alleged civil rights violations, be preserved. *Id*. at 7-8.

**b. Amended 2255 Motion (ECF No. 474)**:

On August 29, 2024, Paul, through counsel, filed his Amended Motion to Modify, Correct, or Vacate Sentence Pursuant to 28 U.S. C. § 2255. This pleading is the operative pleading in this proceeding. With the Amended Motion Paul raises the following five (5) claims:

> (i) Paul's first-degree murder conviction is invalid because the Indictment was defective and did not charge the elements of felony murder, including ineffective assistance of counsel for failing to object to the Indictment.
>
> (ii) The jury instructions for Count-one of the Indictment relieved the Government of its obligation to prove the elements of the crime beyond a reasonable doubt, including ineffective assistance of counsel for failing to object to the erroneous instructions.
>
> (iii) Paul was incompetent to be tried.
>
> (iv) Paul's Sixth Amendment rights under *McCoy v Louisiana* were violated.[5]
>
> (v) The cumulative effect of the forgoing violations entitled Paul to relief.

---

[5] *McCoy v. Louisiana*, 584 U.S. 414 (2018) stands for the proposition a criminal defendant is entitled to determine the ultimate objectives of his defense, including his desire to maintain his innocence. In *McCoy*, the Supreme Court held that when "a client expressly asserts that the objective of 'his defense' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." 584 U.S. at 423.

Paul claims his Motion is both timely and is not successive.

The Government responded to the Motion. ECF No. 479. The Government argues the instant Motion is successive pursuant to § 2255(h) and should be denied. In the alternative, the Government argues Paul's claims regarding a defective indictment and erroneous jury instructions constitute abuse of writ, Paul's claims regarding mental incompetency and sixth amendment violations have previously been raised and denied, and the Eighth Circuit does not recognize cumulative error claims in § 2255 claims.

**c. Successive Motions Generally**:

As a preliminary matter, it should be noted that a motion pursuant to § 2255 is fundamentally different from a direct appeal. The Court will not reconsider an issue, which was decided on direct appeal in a motion to vacate pursuant to § 2255. *See United States v. Davis*, 406 F.3d 505, 511 (8th Cir. 2005). Section 2255 provides that a federal prisoner may seek post-conviction relief in certain circumstances. The statute sets out four instances in which a federal prisoner may seek post-conviction relief:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that [1] the sentence was imposed in violation of the Constitution or laws of the United States, or that [2] the court was without jurisdiction to impose such sentence, or that [3] the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

*See*, 28 U.S. C. § 2255(a). However, a federal prisoner essentially gets only one chance to attack a final conviction and sentence. Section 2255(h) provides in pertinent part:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain--

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Federal prisoners may not file "second or successive" § 2255 motions without an appropriate certification from the circuit court. *See Boykin v. United States*, 242 F.3d 373 (8th Cir. 2000)(*per curium*). Where a federal prisoner fails to comply with the certification requirement for a second or successive § 2255 motion, the district court lacks jurisdiction to entertain such motion. *See Burton v. Stewart,* 549 U.S. 147, 152 (2007).

While section 2255(h) prohibits petitioners from filing a "second or successive application" without authorization from the appropriate court of appeals, the phrase "second or successive" is a term of art not defined by statute and not all second-in-time petitions are "second or successive." *Magwood v. Patterson*, 561 U.S. 320, 332, 342 (2010). In *Magwood,* the Supreme Court held that a habeas application that challenges a "new judgment intervening between the two habeas petitions" is not successive. *Id.* at 339.

**d. *Magwood v. Patterson*, 561 U.S. 320 (2010)**:

Paul asserts the Supreme Court decision in *Magwood v. Patterson* dictates that his instant Motion is not a second or successive motion under 28 U.S.C. §§ 2255(h) and 2244(b). The Government argues *Magwood* is not applicable here. Accordingly, a close look at *Magwood* is required.

In *Magwood*, Billy Joe Magwood was sentenced to death for murdering a sheriff in Alabama. The Alabama state courts denied relief on direct appeal and in state post-conviction

proceedings. Magwood then filed an application, pursuant to 28 U.S.C. § 2254, for a writ of *habeas corpus* in the United States District Court, challenging both his conviction and his sentence.[6] The District Court conditionally granted the writ as to the sentence, mandating that Magwood either be released or resentenced. *See*, 561 U.S. at 323.

Following the decision of the United States District Court, vacating Magwood's death sentence and sending the case back to state court for a new sentencing proceeding, the state court held a new sentencing hearing. *See Magwood*, 561 U.S. at 326. In *Magwood*, Justice Thomas quotes from the sentencing transcript and described the next phase of the case in the state courts:

> [The state trial] judge found that Magwood's mental state, as well as his age and lack of criminal history, qualified as statutory mitigating circumstances. As before, the court found that Magwood's capital felony under § 13–11–2(a)(5) included sufficient aggravation to render him death eligible. In his proposed findings, Magwood's attorney agreed that Magwood's offense rendered him death eligible, but argued that a death sentence would be inappropriate in light of the mitigating factors. The trial court imposed a penalty of death, stating on the record that the new "judgment and sentence [were] the result of a complete and new assessment of all of the evidence, arguments of counsel, and law."

*Id*. (emphasis added). The Alabama state courts affirmed, *Magwood v. State,* 548 So.2d 512, 516 (Ala.Crim.App.1988); *Ex parte Magwood,* 548 So.2d 516, 516 (Ala.1988), and the Supreme Court denied certiorari, *Magwood v. Alabama,* 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989).

Magwood then sought post-conviction relief in state court and was denied. *See Magwood v. State,* 689 So.2d 959, 965 (1996) The Supreme Court again denied certiorari. *See Magwood v. Alabama,* 522 U.S. 836 (1997). Magwood thereafter sought relief in the United States District

---

[6] While *Magwood* considered a § 2254 petition, the same analysis applies to determining whether a motion pursuant to § 2255 is "successive." *See, e.g., Johnson v. United States*, 623 F.3d 41, 45 (2d Cir.2010) ("[N]othing in the AEDPA indicates that Congress intended the 'second or successive' rules to operate differently with regard to state and federal prisoners."

Court through a second § 2254 petition.

The District Court once again conditionally granted the writ, finding constitutional defects in the new sentence imposed by the state court. The state appealed and the Court of Appeals for the Eleventh Circuit reversed, holding in relevant part that Magwood's challenge to his new death sentence was an unreviewable "second or successive" challenge under 28 U.S.C. § 2244(b) because he could have mounted the same challenge to his original death sentence. The Supreme Court reversed the Eleventh Circuit and held that because Magwood was challenging a new judgment for the first time his petition was not successive. *See Magwood*, 561 U.S. at 323-24.

**e. *Magwood* as applied to the Instant Case**:

This Court is called upon to decide whether the rule set out in *Magwood* applies in this case. The *Magwood* decision did not expressly decide the question of whether a 2255 motion following a resentencing is "second or successive" where it challenges the underlying conviction rather than the resentencing. This is the specific issue presented in Paul's case at bar. The Supreme Court has not addressed this issue and there is a split among the circuit courts of appeal.

The Eighth Circuit has discussed the applicability of *Magwood* to a similar situation. In *Dyab v. United States*, 855 F.3d 919 (8th Cir. 2017), a federal prisoner filed two unsuccessful § 2255 motions attacking his conviction and sentence for wire fraud. Thereafter the Government moved to reduce the amount of restitution originally ordered and the court amended the judgment to reflect a co-defendant was jointly liable with Dyab for the restitution. Thereafter Dyab filed a third § 2255 motion claiming (1) that the court's entry of an amended judgment violated his right to due process of law under the Fifth Amendment, because he received no notice or opportunity to

be heard, and (2) he is actually innocent of money laundering. The trial court ruled the third § 2255 motion successive and denied it. Dyab appealed claiming in part, that *Magwood* allowed his § 2255 motion because it attacked a "new judgment" after his "resentencing." The Eighth Circuit determined the amended judgment was not a "new judgment" which would permit the filing of a subsequent § 2255 motion. The Court held:

> Not every change to a judgment results in a new sentence or judgment that wipes clean the slate of post-conviction motions previously filed. A district court modifying a sentence under 18 U.S.C. § 3582(c), for example, "does not impose a new sentence in the usual sense." *Dillon v. United States*, 560 U.S. 817, 827, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010). A sentence modification is "only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding."
>
> . . .
>
> We think the district court's order amending Dyab's judgment did not result in a new sentence or judgment. There was no substantive proceeding that adjudicated Dyab's guilt or determined the appropriate punishment. . . . The district court thus correctly dismissed Dyab's successive motion for lack of authorization from the court of appeals.

*Dyab*, 855 F.3d at 923-24 (emphasis added). This is analogous to the situation here. In *Dyab*, the "new judgment" was based on a sentence adjustment pursuant to a statute, here Paul's "new judgment" is simply the imposition of the only available sentence pursuant to the applicable statute. There was no substantive hearing of any kind.

Similarly, in *Suggs v. United States*, 705 F.3d 279 (7th Cir.2013) the Seventh Circuit was presented with almost the identical situation as Paul's case presents. Suggs filed a successful § 2255 motion and was resentenced from 300 months to 240 months incarceration. This reduction was based on a successful claim of ineffective assistance of counsel at sentencing. He filed a second § 2255 motion several years later claiming he received new information showing his actual innocence. *Id*. at 281. The *Suggs* court held:

> *Magwood* left open the question whether a motion following a resentencing is "second or successive" where it challenges the underlying conviction, not the resentencing. Suggs' case is distinct from the situation in *Magwood,* where the errors alleged in the second petition were "new." The petitioner in *Magwood* challenged an error made in the initial sentencing and again in the resentencing, leading the Court to observe that "[a]n error made a second time is still a new error." <u>The same is not true here. Suggs does not claim that any errors, new or repeated, occurred in his resentencing</u>.

Id. at 284. (emphasis added)(citations omitted).

Other circuits have also declined to extend *Magwood*, finding that a new sentence does not always act as a new judgment for the underlying conviction. *See In re Lampton*, 667 F.3d 585, 588–89 (5th Cir. 2012). Notably, at least one circuit has declined to extend *Magwood* to the context of § 2244(d)(1). *See Romansky v. Superintendent Greene SCI*, 933 F.3d 293, 300 (3d Cir. 2019) (holding that a resentencing on some counts of conviction is not a new judgment as to the undisturbed counts of conviction).

However, I note that other circuits have reached different conclusions than did the courts in *Dyad* and *Suggs*. For these circuits, the rule of *Magwood* is absolute and a new sentence acts as a new judgment and provides a reset to challenge the underlying conviction even if it was not disturbed by the resentencing. *See Johnson v. United States*, 623 F.3d 41, 46 (2d Cir. 2010)("[W]here a first habeas petition results in an amended judgment, a subsequent petition is not successive regardless of whether it challenges the conviction, the sentence, or both."); *In re Gray*, 850 F.3d 139, 143 (4th Cir. 2017)("[W]hen a habeas petition is the first to challenge a new judgment, it is not second or successive within the meaning of § 2244(b), regardless of whether it challenges the sentence or the underlying conviction."); *see also King v. Morgan*, 807 F.3d 154, 156 (6th Cir. 2015); *Wentzell v. Neven*, 674 F.3d 1124, 1127–28 (9th Cir. 2012); *Insignares v.*

*Sec'y, Fla. Dep't of Corrections*, 755 F.3d 1273, 1281 (11th Cir. 2014) (*per curiam*).

The undersigned finds the analysis of *Dyad* and *Suggs* persuasive in this instance. Despite the holding in other circuit courts of appeal, Paul's case is distinguishable from *Magwood* based on its basic procedural posture and facts. In *Magwood* the petitioner was afforded a new sentencing hearing, and the state court performed a "compete and new assessment" of all the evidence, arguments of counsel and the law. *Id*. at 339. As Justice Thomas noted in *Magwood*:

> This is Magwood's *first* application challenging that intervening judgment. The errors he alleges are *new*. It is obvious to us—and the State does not dispute—that his claim of ineffective assistance at resentencing turns upon new errors [that occurred during the new sentencing]. . . That is especially clear here, where the state court conducted a full resentencing and reviewed the aggravating evidence afresh.

*Id.* (emphasis added). Unlike *Magwood*, in Paul's case, there was no new sentencing hearing, no review of any evidence, no alleged ineffective assistance at the new sentencing proceeding, and importantly, *no allegation of new errors*.

Also notable, Paul's petition, pursuant to 28 U.S.C. §§ 2255 and 2241 in the S.D. of Indiana, was specifically denied as to the claims that went to his underlying conviction for first-degree murder. Judge Magnus-Stinson specifically held his claims of actual innocence and mental illness were barred as successive under § 2255. Only in the § 2241 challenge to the § 924(c) conviction was he successful. His conviction for first-degree murder was not changed in any way and remains Paul's count of conviction.

However, because the § 924(c) claim was successful, Judge Magnus-Stinson had to consider whether the death penalty imposed following his conviction of first-degree murder was also invalid. Judge Magnus-Stinson held that the court "cannot determine whether Mr. Paul's §

924(c) conviction influenced his sentence [imposed as a result of the first-degree murder conviction]. Mr. Paul's death sentence is therefore VACATED, subject to retrial on the penalty phase in the district of conviction." ECF No. 450-1, p. 16-17.

Thereafter, the Government withdrew its notice of intent to seek the death penalty and Judge Brooks resentenced Paul to the only available statutory sentence, life imprisonment. There was no plenary new sentencing hearing. Paul does not seek to challenge any aspect of the resentencing. There is no alleged error either new or repeated in the entry of the Amended Judgment. Instead, Paul seeks to reassert claims of error made during the trial of his original 1997 conviction. All of these claims have been specifically addressed by the Federal Courts at trial, on direct appeal, and in the subsequent § 2255 proceedings. This case is unlike *Magwood* where the petitioner challenged an error made at the initial sentencing and additional errors made at the resentencing, leading the Court to note that "[a]n error made a second time is still a new error." There are no new errors, as Justice Thomas specifically noted were present in *Magwood*.

For these reasons, the court finds Paul's instant Motion, attacking his original conviction, is an attempt to file a second or successive § 2255 motion without proper leave to do so. Before he is permitted to proceed with such a motion, a panel of the Eighth Circuit Court of Appeals must authorize Paul to file a second or successive § 2255 motion.

**4. Recommendation**:

For the foregoing reasons, it is recommended the instant *pro se* Motion (ECF No. 462) and the Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 474) should be **DENIED**. Because this court lacks jurisdiction over a second or successive petition under § 2255, the dismissal should be without prejudice. No hearing is required in this

matter.[7]

The Court recognizes that "that reasonable jurists could debate whether (or, for that matter, agree that) the [issue] should have been resolved in a different manner or that the issues presented were " 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because of the difference among the Circuits in treatment of the issue discussed above, it is recommended a Certificate of Appealability issue as whether Paul's instant Motion is successive pursuant to the United States Supreme Court's decision in *Magwood v. Patterson*. *See* 28 U.S.C. § 2253(c).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

**DATED** this 22nd **day of April 2025.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE

[7] No evidentiary hearing is necessary in this case as the record is clear the movant is not entitled to relief. The "clarity of the existing record" may make an evidentiary hearing unnecessary. *See Latorre v. United States*, 193 F.3d 1035 (8th Cir. 1999). Further, the rules clearly contemplate dismissal without a hearing in this instance: "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." Rule 4(b) of the Rules Governing § 2255 Proceedings.