UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 6:96CR60022-001 |
| | ) | |
| JEFFERY WILLIAM PAUL | ) | |

**UNITED STATES' RESPONSE TO AMENDED MOTION TO MODIFY, CORRECT, OR VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Comes now the United States of America, by and through Kimberly D. Harris, Interim United States Attorney for the Western District of Arkansas, and for its Response to Defendant's Amended Motion to Modify, Correct, or Vacate Sentence Pursuant to 28 U.S.C. § 2255, states:

## FACTUAL AND PROCEDURAL HISTORY

### I. Proceedings Related to the Western District of Arkansas and the Eighth Circuit

On June 22, 1995, Jeffrey Paul and an acquaintance, Trinity Ingle, followed 82-year-old Sherman Williams onto a trail in Hot Springs National Park. Paul and Ingle robbed, beat, and fatally shot Williams. They pulled the victim's body about thirty feet from the trail in an effort to conceal it. But four days later, a hiker found the remains under logs and rocks, with hands and ankles tightly bound in duct tape. A piece of tape presumed to have gagged Williams was found around his neck. Williams died from a gunshot wound to the head and had suffered near decapitation. *United States v. Paul*, 217 F.3d 989, 994 (8th Cir. 2000).

On December 4, 1996, a federal grand jury in the Western District of Arkansas returned a superseding indictment in Criminal No. 6:96CR60022 that charged Paul with aiding and abetting murder within the special territorial jurisdiction of the United States (18 U.S.C. §§ 1111 & 2), and aiding and abetting firearm-use murder during and in relation to a crime of violence (18 U.S.C. §§ 924(j) & 2). (Doc. 86). Count 1 charged,

> On or about the 22nd day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, JEFFERY WILLIAM PAUL, and another person known to the grand jury, while aiding and abetting each other, within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States, pursuant to Title 18 U.S.C. § 7(3), did, with malice aforethought, kill Sherman Williams, by means of gunshot wounds, in the perpetration of a robbery, in violation of 18 U.S.C. § 1111(a) and § 2.

*Id.* Count 2 charged,

> On or about the 22nd day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, Jeffery William Paul, and another person known to the grand jury, while aiding and abetting each other, within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States, pursuant to title 18 U.S.C. § 7(3), did knowingly carry and use a firearm, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, to wit: a robbery in the national park, Hot Springs, Arkansas, on or about June 22, 1995, as set forth in Count 1 of this indictment which is realleged and incorporated by reference herein, in violation of Title 18 U.S.C. § 924(c)(1), and in the course of this violation caused the death of a person through the use of a firearm, which killing is a murder as defined in Title 18 U.S.C. § 1111, in that the defendant, did unlawfully kill Sherman Williams by shooting him with the firearm in the perpetration of the robbery and attempted perpetration of the robbery in violation of 18 U.S.C. § 924(i)(1) and § 2.

*Id.* The Court instructed the jury during the guilt-innocence phase of trial that the crime of robbery has three essential elements which are:

> One; that Sherman Williams had in his possession or on his person or presence anything of value.
>
> Two; that the defendant took and carried away anything of value from Sherman Williams by force or violence, and
>
> Three; that the taking occurred within the boundaries of the Hot Springs National Park.

(Doc. 430-4, pg. 76). The petite jury convicted Paul as charged. *Paul*, 217 F.3d at 994. Following a penalty phase trial, the jury recommended a death sentence, which the trial court imposed. *Paul*, 217 F.3d at 994.

On September 25, 1998, Paul filed a notice of appeal. (Doc. 249). On appeal, Paul contended among other allegations that:

1) the prosecutor took inconsistent actions at his trial and at Ingles trial by arguing that the defendant in each trial pulled the trigger;

2) his rights under the Federal Death Penalty Act and the Constitution were violated because the jury failed to unanimously find and consider as a relevant mitigating factor that Ingle only received a life sentence;

3) the prosecution relied upon unadjudicated bad act evidence at trial and at sentencing in violation of his statutory and constitutional rights;

4) the government presented unnecessary and prejudicial testimony during the guilt phase of the trial regarding Williams' life; and

5) there was error in the prosecutor's closing argument.

On June 27, 2000, the Eighth Circuit filed its opinion affirming Paul's conviction. *Paul*, 217 F.3d at 1005.

Paul then sought a *writ of certiorari* with the Supreme Court on January 29, 2001, which was denied on October 1, 2001. *Paul v. United States*, 534 U.S. 829 (2001). Subsequently, on February 19, 2002, the Supreme Court denied Paul's petition for rehearing. *Paul v. United States*, 534 U.S. 1156 (2002).

Thereafter, on December 17, 2002, Paul filed a Motion for New Trial or to Vacate Defendant's Conviction and Death Sentence Under 28 U.S.C. § 2255. (Doc. 271). Among Paul's grounds for relief were:

1) he was incompetent before and during trial;

2) the Court failed to hold an adequate hearing to address and adequately resolve the issue of competence to stand trial, and

3) trial counsel was ineffective in failing properly to assert their client's incompetence to stand trial and failing to seek a formal hearing regarding his competence.

The Court denied Paul's motion pursuant to 28 U.S.C. § 2255 on January 31, 2005. (Doc. 323).

On August 24, 2005, Paul filed a notice of appeal. (Doc. 334). Paul further moved pursuant to 28 U.S.C. § 2253 and Fed. R. App. Pro. 22 (b)(1), for a Certificate of Appealability ("COA"). (Doc. 338).

On September 6, 2005, the Eighth Circuit remanded Paul's case for consideration in light of *Tiedeman v. Benson*, 122 F.3d 518 (8th Cir.1997), with directions that if granted, the COA specify the issue or issues that are to be considered on appeal. (Doc. 341).

After reviewing Paul's application for a COA and finding it to be essentially a restatement and re-argument of contentions the Court had previously addressed and rejected, the Court, on October 26, 2005, declined to issue a COA. (Doc. 345).

However, on January 25, 2007, the Eighth Circuit granted Paul a COA to address three issues:

1) Whether trial counsel were ineffective for failing to investigate and present evidence of Appellant's mental, medical and physical history;

2) Whether trial counsel were ineffective for failing to investigate and assert Appellant's incompetence to stand trial; and

3) Whether Appellant has a constitutional right to competence during federal habeas corpus proceedings and, if so, whether that constitutional right was violated. (Doc. 351). On appeal, Paul argued:

1) trial counsel were ineffective for failing to investigate and present evidence of his mental, medical, and physical history;

2) trial counsel were ineffective for failing to investigate and assert his incompetence to stand trial;

3) federal law guaranteeing meaningful access to the courts requires that a prisoner challenging a capital conviction and sentence be mentally competent during habeas corpus proceedings and that guarantee was violated in his case;

4) his right to due process of law was violated when key government witnesses clandestinely received cash rewards after the jury was told no such rewards would be forthcoming; and

5) improper *ex parte* communications between the government and the district court warranted assignment of a different judge pursuant to 28 U.S.C. § 2106.

The Eighth Circuit affirmed the Court's denial of Paul's petition on July 22, 2008. *Paul v. United States*, 534 F.3d 832 (8th Cir.2008). Paul then sought a *writ of certiorari* which was denied on October 5, 2009. *Paul v. United States*, 130 S.Ct. 51, 175 L.Ed.2d 43, 78 USLW 3171 (2009).

On February 7, 2013, Paul, *pro se*, filed another Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 362). In his § 2255 Motion, Paul sought relief based on:

1) His actual innocence;

2) His sentence is unfair because his co-defendant was given a life sentence; and

3) Prosecutorial Misconduct.

Thereafter, Paul began a flurry of *pro se* filings which included among others:

1) Motions for Order (Docs. 366 and 370) in which he again raised issues of wrongful conviction and his co-defendant's conviction as defenses to his own sentence;

2) Motion for Effective Assistance, (Doc. 367) and Motion for Effective Assistance of Counsel (Doc. 371), in which he argued, amongst others, issues raised in his appeal, first § 2255 Motion and his then current pending second § 2255 motion;

3) Motion for Order of Estoppel of Criminal Complaint, (Doc. 368) wherein he again raised issues of the alleged illegality of his conviction;

4) Motion for Due Process (Doc. 375) claiming the right to certify an "exonerating affidavit"; and

5) Motions for Emergency Injunctive Relief, (Docs. 378, 379, and 380), in which Paul requested his wife be taken into custody and claimed that he would produce evidence of actual innocence and claiming in Docket Entry No. 379 that his co-defendant gave an affidavit exonerating him from the crime for which he was convicted.

Each of Paul's motions were denied by the Court on June 17, 2013. (Doc. 381). That same day, the magistrate judge issued his report and recommendation on Paul's *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 and recommended the motion be denied. (Doc. 382).

Paul then began another round of filings by first filing another *pro se* motion to vacate on June 27, 2013, claiming, among other issues, that he was under the age of 18 at the time of his conviction and that pursuant to *Roper v. Simmons*, 543 U.S. 551 (2005), minors are not competent to face the death penalty because it is cruel and excessive punishment. (Doc. 383).

Next Paul filed a *pro se* Motion for Immediate Relief (Doc. 384) and *pro se* Motion for Relief (Doc. 385) claiming he was underage and not eligible for conviction under 18 U.S.C. § 1111 and requested a hearing on the issue (Doc. 386).

Thereafter, Paul filed a *pro se* motion to amend in which he set forth his equations which the court should use to properly determine his age at the time of the murder. (Doc. 388).

On July 22, 2013, the magistrate issued his report and recommendation regarding Paul's Motion to Vacate (Doc. 383), Motion for Immediate Relief (Doc. 384), Motion for Relief (Doc. 385), Motion for Hearing (Doc. 387), and Motion to Amend (Doc. 388), recommending these be denied and recommended the Clerk of the court be directed to accept no further *pro se* filings by Paul in this matter until further notice by the Court. (Doc. 390). The magistrate based his recommendation on finding the Court has no obligation to consider Paul's *pro se* filings because he is represented by counsel and has no constitutional or statutory right to simultaneously proceed *pro se* and with benefit of counsel. Paul filed his *pro se* objections to the report and recommendation on July 31, 2013. (Doc. 391). On August 26, 2013, Court issued its order adopting the magistrate's report and recommendation *in toto*. (Doc. 392).

On September 9, 2013, separately, and without the assistance of counsel, Paul sought permission to file a successive motion for relief under § 2255, so he could present new claims for relief based on actual innocence and ineligibility for the death penalty based on his age at the time

of the murder, which the Eighth Circuit denied. *Paul v. United States*, case no. 13-2987 (8th Cir. Oct. 1, 2013).

The following year, Paul petitioned *pro se* for an extraordinary writ, which the Eighth Circuit denied. *In re: Paul*, case no. 14-1832 (8th Cir. Apr. 22, 2014). Paul also petitioned *pro se* for an extraordinary writ in the Seventh Circuit in which he claimed he was actually innocent and being illegally detained, which that court denied. *Paul v. Lawrence*, case no. 16-2220 (7th Cir. May 26, 2016). With the assistance of counsel, Paul again unsuccessfully asked the Eighth Circuit Court for a second time for permission to file a successive § 2255 motion requesting permission to file a successive 2255 motion claiming the holdings of *Johnson* and *Welch* have rendered his death sentence invalid. *Paul v. United States*, case no. 16-2330 (8th Cir. Aug. 5, 2016). On May 14, 2019, Paul, for a third time, moved for permission to file a successive § 2255 motion, arguing trial counsel's concession before the jury that Paul was guilty of robbery denied him his right to counsel and his rights guaranteed by the United States constitution to make fundamental decisions concerning his own defense and that *McCoy V. Louisiana* was a new rule of constitutional law that applied retroactively, which the Eighth Circuit denied. *Paul v. United States*, case no. 19-1994 (8th Cir. June 21, 2019).

## II. Proceedings Related to the Southern District of Indiana

On August 20, 2013, Paul filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the Southern District of Indiana. (S.D. Ind., No. 2:13-cv-00304, Dkt. 1). That petition asserted, among other things, that Paul was entitled to a new sentencing hearing on his § 924(c) conviction in view of *Johnson v. United States*, 135 S. Ct. 2551 (2015). The government moved to dismiss the petition for lack of jurisdiction. (S.D. Ind., No. 2:13-cv-00304, Dkt. 39). The Southern District of Indiana court denied the motion and permitted Paul to file an

amended § 2241 motion. (S.D. Ind., No. 2:13-cv-00304, Dkt. 44). The amended motion alleged, among other things, that the Southern District of Indiana should vacate Paul's § 924 conviction under *Johnson*. (S.D. Ind., No. 2:13-cv-00304, Dkt. 103 at 42-57). In response, the government argued that the Southern District of Indiana should deny the petition under 28 U.S.C. § 2244 and § 2255(e). (S.D. Ind., No. 2:13-cv-00304, Dkt. 158). Without ruling on the response, the Southern District of Indiana stayed the proceedings pending the decision in the Supreme Court case of *United States v. Davis*, No. 18-431, concerning the constitutionality of § 924. (S.D. Ind., No. 2:13-cv-00304, Dkt. 220). On June 24, 2019, the Supreme Court issued an opinion in *Davis*, declaring a provision of § 924 unconstitutionally vague. *United States v. Davis*, 588 U.S. 445 (2019). Two days later, the Southern District of Indiana ordered the government to file a supplemental brief addressing *Davis*. (S.D. Ind., No. 2:13-cv-00304, Dkt. 224). The government, in its supplemental briefing, argued that Paul had improperly raised his claim under § 2241 rather than § 2255 and that his predicate offense, robbery, satisfied § 924's valid definition of a "crime of violence." (S.D. Ind., No. 2:13-cv-00304, Dkt. 231).

On May 26, 2020, Paul for a fourth time filed in the Eighth Circuit Court of Appeals a motion for leave to file a successive § 2255 motion, asserting much the same *Davis* claim pending in his § 2241 action. *Paul v. United States*, No. 20-2042 (8th Cir.). On June 1, 2020, the Southern District of Indiana issued an Order staying the § 2241 proceedings so that Paul could pursue leave to file a successive § 2255 motion in the Western District of Arkansas. (S.D. Ind., No. 2:13-cv-00304, Dkt. 244). The Eighth Circuit denied Paul's motion for authorization to file a successive motion under 28 U.S.C. § 2255 on June 29, 2020. *Paul v. United States*, No. 20-2042 (8th Cir.). That same day, the Southern District of Indiana issued an Order lifting the stay and denying a multitude of Paul's *pro se* motions. (S.D. Ind., No. 2:13-cv-00304, Dkt. 265).

On September 28, 2021, Paul filed a Motion for Leave to File Amendment to Petition for Writ of Habeas Corpus within Thirty Days based on the Supreme Court's decision in *Borden v. United States*, 141 S.Ct. 1817 (2021), wherein the Supreme Court held that a criminal offense that requires only a *mens rea* of recklessness cannot count as a "violent felony" under the elements clause of the ACCA. The Southern District of Indiana granted Paul's motion on October 6, 2021. (S.D. Ind., No. 2:13-cv-00304, Dkt. 270).

Thereafter, on October 22, 2021, Paul filed his Amendment to Petition for Writ of Habeas Corpus arguing that he is actually innocent of the crimes for which he was convicted, that he is too mentally ill to be executed, that his indictment was defective, and that his § 924(c) conviction must be vacated because the robbery offense underlying that conviction is not a crime of violence under §924(c)(3)(A). (S.D. Ind., No. 2:13-cv-00304, Dkt. 271). The government opposed Paul's Amended Petition. (S.D. Ind., No. 2:13-cv-00304, Dkt. 272).

On August 2, 2022, the Southern District of Indiana granted, in part, Paul's § 2241 petition. (S.D. Ind., No. 2:13-cv-00304, Dkt. 281). As to Paul's actual innocence claim, the Southern District of Indiana found that his claim failed to satisfy any of the circumstances recognized by the Seventh Circuit for satisfying the § 2255(e) savings clause and even if it did, the claim still would not warrant relief. (S.D. Ind., No. 2:13-cv-00304, Dkt. 281, pp. 6 – 9). Additionally, the Southern District of Indiana found his claim that he is constitutionally ineligible to be executed would likely be barred by § 2255(e) but nonetheless found this claim not ripe. (S.D. Ind., No. 2:13-cv-00304, Dkt. 281, pp. 9 – 10). As to Paul's § 924(c) claim, the Southern District of Indiana found that any defect in the indictment could not be cured in a § 2241 filing as such claim could have been raised in a § 2255 motion. (S.D. Ind., No. 2:13-cv-00304, Dkt. 281, pp. 10 – 12). However, the Southern District of Indiana found that Paul could bring his claim under § 2241 on the question of whether the robbery

offense qualified as a crime of violence and determined that neither Paul's "indictment nor his jury instructions required a showing that the knowingly used force during the course of a robbery" and vacated his § 924(c) conviction. (S.D. Ind., No. 2:13-cv-00304, Dkt. 281, pp. 12 – 16). Additionally, the Southern District of Indiana vacated Paul's death sentence. (S.D. Ind., No. 2:13-cv-00304, Dkt. 281, pp. 16 – 17).

On October 10, 2023, the government filed in this Court its Withdrawal of Notice to Seek the Death Penalty and Notice of Intent Not to Seek the Death Penalty which gave notice that the United States did not intend to pursue a sentence of death in the resentencing of Paul. (Doc. 458). Thereafter, on October 18, 2023, this Court filed an Amended Judgment sentencing Paul to life imprisonment on his remaining felon murder conviction under § 1111. (Doc. 459).

On March 19, 2024, Paul filed a *pro se* Petition for Writ of Habeas Corpus requesting the Court to vacate his murder conviction, appoint counsel to file any further or alternate pleas if his petition were to be denied, preserve for the record further civil rights claims, and expedite his release. (Doc. 462). Thereafter, by Order, the Court redesignated Paul's petition as a Motion to Modify, Correct or Vacate Sentence pursuant to 28 U.S.C. § 2255, ordered Mr. Shawn Nolan of the Federal Defender's Office for the Eastern District of Pennsylvania to notify the Court of his status or his office's status current representation of Paul, ordered Mr. Nolan to file an Amended Motion of Paul's behalf, and ordered Paul to file no further *pro se* pleadings in this matter until further order of the Court. (Doc. 461).

After filing his notice of status representation (Doc. 465) and a couple of motions for extension of time to file an amended motion under § 2255 (Docs. 468 and 470), Mr. Nolan filed an Amended Motion to Modify, Correct, or Vacate Sentence Pursuant to 28 U.S.C. § 2255 under seal (Doc. 474). The United States filed its response on December 20, 2024, arguing that Paul's amended

§ 2255 Motion should be barred as a second or successive under § 2244(b) because all claims stated in Paul's amended motion challenge alleged errors that occurred during the original pretrial, trial, and sentencing process. (Doc. 479). The Magistrate Judge agreed with the United States and on April 22, 2025, issued a Report and Recommendation recommending Paul's amended § 2255 Motion be dismissed as second or successive. (Doc. 489).

Paul filed objections to the Magistrate Judge's Report and Recommendation. (Doc. 492). After which, the Court conducted a de novo review and declined to adopt the Report and Recommendation and ordered the United States to file supplemental briefing on the merits of Paul's claims. (Doc. 495).

## ARGUMENT

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence ... claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The court may grant the motion if it finds "that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement on the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b).

In his amended § 2255 Motion, Paul claims

(1) his first-degree murder conviction is invalid because the indictment was defective and did not charge the elements for felony murder and trial counsel were ineffective for failing to object to the invalid indictment,

(2) Count One jury instruction was erroneous and relieved the United States of its Fifth and Sixth Amendment obligation to prove every element of the crime beyond a reasonable doubt and trial counsel were ineffective for failing to object to the erroneous instruction,

(3) he was incompetent to be tried, and trial counsel were ineffective for failing to effectively litigate his competence to stand trial,

(4) his Sixth Amendment rights under *McCoy v. Louisiana* were violated,

(5) he is entitled to relief based on the cumulative effect of his claims.

The United States stands by its original response (Doc. 479) that Paul's amended § 2255 Motion should be barred as second or successive under § 2244(b), regardless of the fact that the judgment in the underlying criminal case was partially vacated and reentered.

## I. Because Count One of the Superseding Indictment was Sufficient, Paul's First-Degree Murder Conviction is Valid

### A. The Indictment Charging Paul was Sufficient

The Fifth Amendment to the United States Constitution and Rule 7(a)(1), Federal Rules of Criminal Procedure, require that felonies be charged by grand jury indictment. An "indictment" is the document founded by a grand jury charging a defendant with a crime. The primary purposes of an indictment are to inform the defendant of the charges he must defend against and to allow the defendant to plead double jeopardy to any future prosecution. *United States v. Allen*, 406 F.3d 940, 946 (8th Cir.2005). Defects in an indictment are not jurisdictional and do not affect a court's jurisdiction to hear a case. *United States v. Cotton*, 535 U.S. 625, 629-31 (2002).

Here, Paul contends Count One of the Superseding Indictment was invalid because it specifically failed to reference any statutes or include any elements to the enumerated felony

robbery. This claim should have been raised on direct appeal and in any event, the Superseding Indictment was sufficient.

The principle that claims not raised on direct appeal are defaulted in habeas proceedings prevent circumvention of the direct appeal process. A motion pursuant to § 2255 "may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir.1996). Habeas review is "an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 118 S. Ct. 1604, 1610 (1998) (internal quotation marks and citation omitted); *see also*, *e.g.*, *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir.2003) ("Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process."). The distinction between direct appeal and collateral attack stems from the importance of the finality of judgments. *See Bousley*, 523 U.S. at 621 (internal quotation marks and citation omitted); *see also Frady*, 456 U.S. at 164-65.

For this reason, a claim that could have been but was not raised in a criminal defendant's direct appeal is procedurally defaulted unless the defendant can first demonstrate cause and actual prejudice or actual innocence. *Becht v. United States*, 403 F.3d 541, 545 (8th Cir.2005). Under the "cause and actual prejudice standard ..., to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 167–68. "In order to establish a valid claim of actual innocence, a

defendant must show factual innocence, not simply legal insufficiency of evidence to support a conviction." *McNeal*, 249 F.3d at 749.

In addition, the ability to challenge an indictment in a 2255 proceeding is very limited. *United States v. Armstrong*, 951 F.2d 626, 628 (5th Cir.1992). Only in exceptional circumstances may a court consider a challenge to an indictment in a post-conviction proceeding. *Id*. A jurisdictional challenge claiming the indictment is so defective that it deprived the court of jurisdiction is an issue that may be cognizable in a 2255 motion. *Id.* However, in such a case, the defendant must establish that the face of the indictment failed to charge a federal offense. *Mack v. United States*, 853 F.2d 585, 586 (8th Cir.1988). If the propriety of the charging document is not questioned until after a defendant is convicted, the same is presumed to be sufficient, unless it is so defective that it does not, by any reasonable construction, charge the offense for which the defendant was convicted, and even then, in cases where the conviction is collaterally attacked, only in exceptional circumstances can such an attack be considered[1]. *United States v. Hill*, 171 F. Supp. 2d 1032, 1039 (D.S.D. 2001) (internal citations omitted); *Merrill v. United States*, 599 F.2d 240, 242 (8th Cir.1979); *Link v. United States*, 352 F.2d 207, 209 (8th Cir.1965). Paul's claims clearly do not meet this high threshold.

In this case, Paul did not challenge his Indictment at trial or on his direct appeal. Paul has not suggested any external impediment that prevented him from presenting his claims on direct appeal. Because a federal court need not consider the prejudice exception if the cause component has not been met, Paul cannot rely upon this exception to overcome the procedural default. *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir.1998) (when petitioner "has not shown adequate cause to

[1] Failure to object to defects in the form of the indictment prior to trial constitutes a waiver of the defects. Fed.R.Crim.P. 12(b)(2) (1997).

overcome the procedural bar ... we need not consider the issue of actual prejudice"). Even if he could show adequate cause, as demonstrated below, Paul cannot show he suffered actual prejudice as to his claimed error. Furthermore, Paul fails to demonstrate a miscarriage of justice through actual innocence. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Thus, in this case, Paul simply failed to raise his current non-ineffective assistance of counsel claims on direct appeal, and he is unable to satisfy the "cause and prejudice" standard or demonstrate actual innocence. Therefore, his claims have been procedurally defaulted and should be dismissed. If not dismissed, then the indictment is entitled to liberal review in favor of the United States and is only reviewable for defects so obvious that it was not capable of charging him with the offense of which he was convicted. *Armstrong*, 951 F.2d at 628.

In Count One, Paul was charged under the Federal murder statute, 18 U.S.C. § 1111(a). In Count One he was charged with first-degree felony murder predicated on the enumerated federal offense "robbery." (Doc. 86). The federal murder statute defines murder as:

> (a) **Murder is the unlawful killing of a human being with malice aforethought. Every murder** perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or **committed in the perpetration of, or attempt to perpetrate**, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse burglary, or **robbery**; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, **is murder in the first degree**.
>
> Any other murder is murder in the second degree.
>
> (b) **Within the** special maritime and **territorial jurisdiction of the United States** . . .

18 U.S.C. § 1111 (relevant parts bolded).

Count One of the Superseding Indictment in this case alleged:

> On or about the 22nd day of June, 1995, in the Western District of Arkansas, Hot Springs Division, the defendant, JEFFERY WILLIAM PAUL, and another person known to the grand jury, while aiding and abetting each other, within the confines of Hot Springs National Park, a place within the special maritime and territorial jurisdiction of the United States, pursuant to Title 18 U.S.C. § 7(3), did, with malice aforethought, kill Sherman Williams, by means of gunshot wounds, in the perpetration of a robbery, in violation of 18 U.S.C. § 1111(a) and § 2.

(Doc. 86).

There are no exceptional circumstances present here which require a departure from the general rule that indictments are not subject to collateral attack by § 2255 motions. "An indictment adequately states an offense if: it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Beasley*, 688 F.3d 523, 532 (8th Cir.2012) (*quoting United States v. Hayes*, 574 F.3d 460, 472 (8th Cir.2009)). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself," as long as the words set forth the necessary elements of the offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir.2008). Moreover, it is specifically provided in Rule 7(c) that error in the citation or its omission is not grounds for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not prejudicially mislead the defendant. Fed.R.Crim.P. 7(c)(3) (Harmless error. Error in the citation or its omission shall not be ground for dismissal of

the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to the defendant's prejudice.).[2]

The Superseding Indictment in this case comports with the above standards, as it provides all the elements of the federal murder count by specifying the elements under § 1111(a). That is that Paul killed Sherman Williams, Paul killed Sherman Williams with malice aforethought, the killing of Sherman Williams was committed in the perpetration of a robbery, and Paul killed Sherman Williams within the special maritime or territorial jurisdiction of the United States. (*See* Doc. 86, Count One). Additionally, because the Superseding Indictment stated the approximate date of the killing, the victim's name, and the fact of the means of the killing, enabled Paul to determine whether double jeopardy concerns were implicated. Thus, with respect to the count of murder, the Superseding Indictment tracks the language of the statute and notified Paul not only of the elements of the crime charged but also the relevant facts.

Paul's reference to *United States v. Olson*, 262 F.3d 795, 799 (8th Cir.2001), for the proposition that the absence of any reference to a robbery statute or any elements of the "robbery" referred to by the indictment renders the indictment defective is misplaced. Paul's complaint here is that the Superseding Indictment did not reference by statute or include the elements of the enumerated felony robbery were not also set forth. However, unlike *Olson's* bank robbery offense, robbery was not the offense Paul was charged with. Rather, the fact that Sherman Williams was killed during a robbery is the only element to the federal murder offense Paul was charged with.

---

[2] The current Rule 7 reads: "Citation Error. Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction." Fed.R.Crim.P. 7(c)(2).

Likewise, Paul reads too much into the language in *United States v. Bedonie*, 913 F.2d 782, 789 (10th Cir.1990), where the Tenth Circuit held that "in prosecuting a defendant for first degree murder under the 'felony-murder' provision of § 1111(a), the predicate crime shall be defined by reference to the appropriate federal statute." Paul takes that holding to mean that counts comprising of an offense containing an enumerated felony need to specifically include the statutory cite and the elements of the enumerated felony within the indictment. In *Bedonie*, the defendants were convicted of first-degree murder on a felony murder theory. The defendants had set fire to two police vehicles while in Indian country, killing the persons inside. The district court instructed the jury that it had to return a verdict of first-degree murder if it found the deaths resulted from the commission or attempted commission of arson. The government charged first degree murder by identifying the enumerated felony it would prove at trial without citing a specific arson statute and without specifying its elements. The court defined arson in its jury instructions by reference to a Utah statute.

On appeal, the defendants argued the trial court erred in relying on the Utah statute because that statute could not serve as the predicate to felony murder under 18 U.S.C. § 1111(a). They contended the only proper predicate was 18 U.S.C. § 81, the federal arson statute, which by its own terms did not apply to setting fire to motor vehicles. Because § 81 was inapposite on the facts, they argued, there could be no felony murder. The government countered that the "any arson" language of § 1111(a) did not limit itself to the arson contemplated in § 81 and that the definitions of predicate crimes could be supplied by state statute.

As relevant here, the Tenth Circuit rejected the government's argument while affirming the first-degree murder conviction. Addressing the government's argument, the Tenth Circuit held that "in prosecuting a defendant for first degree murder under the 'felony-murder' provision of §

1111(a), the predicate crime shall be defined by reference to the appropriate *federal* statute." *Id*. at 789 (emphasis added). The court then went further and limited the "arson" listed in § 1111(a) to the federal crime defined in 18 U.S.C. § 81. To hold otherwise, the court stated, would permit the government to "select the statute with the definition most favorable to prosecution." *Id*. at 788.

Thus, *Bedonie* does not stand for the proposition that the enumerated felony's elements must be listed in an indictment, but that you are directed to the appropriate federal statute for the enumerated felony's definition. Paul thus argues that the United States' "belated assertion" that the language in the Superseding Indictment referred to 18 U.S.C. § 2111 cannot stand as the predicate offense because he was not instructed on the elements of § 2111. However, this is where Paul is unable to demonstrate he was "actually prejudiced" by any perceived error in the Superseding Indictment. This is because Paul himself supplied the instruction that defined the elements of robbery, the enumerated felony to the first-degree murder count. (Government Exhibit 1, pg. 21).

Because the Superseding Indictment contained the essential elements of § 1111(a), set forth the offense in the words of the statute itself, referred to the specific enumerated felony (robbery which was defined by Paul himself), and allowed Paul to plead a conviction or acquittal as a bar to a subsequent prosecution, it cannot be argued that the Superseding Indictment was obviously defective as not to be capable by any reasonable construction of being said to charge the offense on which Paul's conviction was had.

**B. Paul Fails to Demonstrate Counsel Performed Deficiently for Failing to Object to A valid Superseding Indictment**

Where federal prisoners believe their constitutional right to an effective attorney was violated, they may raise an ineffective assistance of counsel claim to argue a Sixth Amendment violation. *Strickland v. Washington*, 466 U.S. 668, 699, 701 (1984). When determining whether a

prisoner's right to effective counsel was violated, the court must apply a two-part test: (1) performance – whether the defendant's attorney acted in a manner unreasonable to prudent counsel; and (2) prejudice – but for defendant's attorney's action, defendant would have a different outcome. *Id*., at 687-88. When considering the first element, there is a "strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy." *Toledo v. United States*, 581 F.3d 678, 680 (8th Cir. 2009) (*quoting Garrett v. United States*, 78 F.3d 1296, 1301 (8th Cir.1996)). Where a defendant is unable to prove prejudice, the reviewing court does not need to address the deficiency of counsel's performance. *Strickland*, 466 U.S. at 688. Regarding prejudice, the standard is one of "reasonable probability." *Id*., at 694. "The burden of proving ineffective assistance of counsel rests with the defendant." *United States v. White*, 341 F.3d 673, 678 (8th Cir.2003) (*citing United States v. Cronic*, 466 U.S. 648, 658 (1984)).

Because Paul cannot demonstrate that the Superseding Indictment in his case was defective, he cannot establish that his trial counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (*quoting Strickland*, 466 U.S. at 688). Because Paul cannot show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir.2003).

## II. Paul has not Shown He was Prejudiced by Count One's Jury Instructions

### A. Paul Suffered No Prejudice as to the Jury Instructions on Count One

Next Paul argues that the instructions to the jury on Count One were erroneous and relieved the United States of its Fifth and Sixth Amendment obligation to prove every element of the first-degree murder offense beyond a reasonable doubt. Paul takes issue that jury instructions on the robbery referred to in Count One did not reference or include the elements of that enumerated

felony and that the instructions as to the enumerated felony did not refer to any federal criminal statute. Paul is unable to assert his claim in this § 2255 proceeding.

Again, Paul has procedurally defaulted his second ground for relief as he failed to raise his claims contained under Ground Two on direct appeal. *See United States. v. Samuelson*, 722 F.2d 425, 427 (8th Cir.1983) ("[s]ection 2255 is not a substitute for direct appeal and matters which could have been raised on appeal will not be considered."). Where a defendant has procedurally defaulted a claim through their failure to raise it on direct appeal, the defendant may only raise that claim in a § 2255 proceeding by "demonstrating cause for the default and prejudice or actual innocence." *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir.2001) (*citing Bousley v. United States*, 523 U.S. 614, 622 (1998)). Paul does not assert any cause that would excuse his default. But even if he did, his claim is still not cognizable under § 2255.

Not all trial-related errors form a proper basis for a § 2255 motion, as a conviction or sentence may only be attacked under 28 U.S.C. § 2255 on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *Hill v. United States*, 368 U.S. 424, 426-27 (1962). Generally, erroneous jury instructions are a particular type of claim that does not form a basis for habeas corpus relief. *Monteer v. Benson*, 574 F.2d 447, 449 (8th Cir.1978); *See Houser v. United States*, 508 F.2d 509, 515 (8th Cir.1974) (Claimed errors in ... instructions to the jury ... do not state a claim for relief under 2255). An instructional error must be of "constitutional dimensions" to warrant post-conviction relief for purposes of § 2255. *Williams v. United States*, 98 F.3d 1052, 1054 (8th Cir.1996), *cert. denied*, 520 U.S. 1150 (1997). That requires a showing that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates

due process, not merely [that] the instruction is undesirable, erroneous, or even universally condemned." *Id*. at 1055 (*citing Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). Additionally, Paul must show actual prejudice, that is Paul must show a "substantial likelihood" that a properly instructed jury would have acquitted him of violating 18 U.S.C. § 1111(a). *Id*. at 1055. The well-settled principle is that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal. *Frady*, 456 U.S. at 166. In this case, Paul cannot clear that high hurdle as he is unable to establish that he was actually prejudiced so as to entitle him to § 2255 review of his claim.

As to the enumerated felony, robbery, of Paul's § 1111(a) conviction in this case, the Court instructed the jury:

> You may not find the defendant guilty of first degree murder by reason of killing during the perpetration of a robbery unless you find beyond a reasonable doubt that at the time of the killing, the defendant was engaged in the perpetration of a robbery as defined in these instructions.
>
> The crime of robbery has three essential elements which are:
>
> One; that Sherman Williams had in his possession or on his person or presence anything of value.
>
> Two; that the defendant took and carried away anything of value from Sherman Williams *by force or violence*, and
>
> Three; that the taking occurred within the boundaries of the Hot Springs National Park.

(Trial Tr. at 845) (emphasis added). As Paul points out, § 2111 reads:

> Whoever, within the special maritime and territorial jurisdiction of the United States, *by force and violence, or by intimidation*, takes or attempts to take from the person or presence of another anything of value, shall be imprisoned not more than fifteen years.

18 U.S.C. § 2111 (emphasis added). Thus, the Court's jury instructions differ from the statutory language in that the taking and carrying away of anything of value could be done by force or

violence rather than by force and violence. However, just because the instruction might have been in error, does not mean Paul's due process was violated and that he suffered actual prejudice.

Again, Paul claims, with reference to Judge Magnus-Stinson's finding, that he was not charged with an offense criminalized by statute, including § 2111 and as a result the instructions did not refer to any federal criminal statute. However, as discussed above, Paul was charged with violating 18 U.S.C. § 1111(a), not robbery. Robbery was the enumerated felony that allowed Paul to be charged and convicted of first-degree murder. Additionally, as discussed above, in prosecuting a defendant for first degree murder under the "felony-murder" provision of § 1111(a), the predicate crime shall be defined by reference to the appropriate federal statute, which in this case would be § 2111. While the robbery instruction may have differed from the statutory language of § 2111, such error is not fatal under habeas analysis as Paul must show both a due process violation and actual prejudice.

According to *United States v. Paul*, 217 F.3d 989, 994-95 (8th Cir.2000), the evidence adduced at Paul's trial established that on June 22, 1995, Paul and an acquaintance, Trinity Ingle, followed Williams, an eighty-two-year-old man, from downtown Hot Springs, Arkansas, to a walking trail in Hot Springs National Park. Paul and Ingle robbed and beat Williams and then shot him in the head and shoulder. They attempted to hide the body by pulling it about thirty feet off the trail. Williams' body was found on June 26, 1995, by a hiker, who found it under logs and rocks, with hands and ankles tightly bound by duct tape. A piece of duct tape around Williams' neck was presumed to have once been around Williams' mouth. The Deputy Coroner testified that Williams' head was nearly detached from his spine and there was a large open wound at the right temple above the jaw. Further, a State of Arkansas medical examiner testified that the body had gunshot wounds to the head and chest. The medical examiner testified that Williams died as a

result of the wound to the head. Several of Paul's acquaintances testified that Paul confessed his involvement in the crime to them. Each of these witnesses gave similar accounts of what Paul had told them about the offense. Chris Rogers testified that Paul said that he and Ingle murdered an old man after following him into the park because he looked like an "easy target" to rob. Rogers testified that Paul stated when Williams resisted the robbery, they began beating him, including kicking him in the head hard enough to knock his eye out of its socket. Paul also told Rogers that because Williams was not yet dead following the beating, he shot him, and then Ingle shot him. Paul and Ingle then dragged the body into the woods and covered it up, according to what Paul told Rogers. Rogers testimony was corroborated by several other witnesses. Christine Lapaglia testified that Paul told her he had killed someone when he kicked him and broke his neck. Cindy Wallace testified that Paul told her he had a recurring dream about following an old man, taking his money, and beating him so severely his eye came out of the socket. Paul told Wallace the old man begged for his life, but fearing that he would talk, Paul shot him in the head. Dan Coughlin testified Paul said that he and another Arkansas man had robbed an old man for his vehicle, then shot and killed him.

Paul argues that because the jury instruction used the disjunctive *or* ("by force or violence") instead of the conjunctive *and* ("by force and violence") with regard to § 2111, it is uncertain whether the jury relied on two or more independent grounds, one of which could have been just by *force* which would have been insufficient in proving the enumerated felony of robbery. According to Paul, force "denotes any exercise of physical strength against another" and "seems to be a wider, and possibly gentler, concept than violence," such as a tapping on the shoulder. Contrarily, the Supreme Court has recognized that common-law authorities frequently used the terms "violence" and "force" interchangeably. *Stokeling v. United States*, 586 U.S. 73, 78 (2019).

"The overlap between 'force' and 'violence' at common law is reflected in modern legal and colloquial usage of these terms. 'Force' means '[p]ower, violence, or pressure directed against a person or thing,' or 'unlawful violence threatened or committed against persons or property.' Likewise, 'violence' implies force, including an 'unjust or unwarranted use of force.'" *Id*. at 79. As a result, generally one cannot have violence without force.

Regardless of the semantics, Paul is unable to show he was actually prejudiced by the robbery instruction. Based on the evidence presented at trial, it is clear that the jury determined Paul committed the enumerated felony of robbery by both force *and* violence. After all, the jury heard testimony that Sherman Williams' hands, ankles, and mouth were duct taped. That Sherman Williams was so severely beaten that his eye came out of its socket and his head was nearly detached from his spine. No reasonable jury would have found Paul murdered Sherman Williams on the gentler concept of "force" that he "tapped Sherman Williams on the shoulder." Rather, based on the evidence, the jury could not have found Paul committed the robbery without also finding that he did so through both force and violence. Because the evidence was more than sufficient to convict Paul of felony murder during the commission of a robbery, Paul has failed to show a substantial likelihood that a jury, properly instructed as to "by force *and* violence" would have acquitted him of violating § 1111(a). As a result, no prejudice excusing procedural default resulted from the Court giving the alleged erroneous robbery jury instruction.

**B. Paul Fails to Demonstrate Counsel Provided Ineffective Assistance for Failing to Object to Count One's Jury Instructions**

To satisfy *Strickland's* first prong, a defendant must show that the counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. The defendant must illustrate that counsel failed to uphold the duty to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 691. This

determination examines the facts of the case at the time of the trial, not in hindsight. *Id*. at 690. To satisfy the second prong of the *Strickland* test, the defendant must also show that the ineffective assistance of counsel prejudiced the defendant. *Id*. at 668. The defendant must show that there is a "reasonable probability" that if not for her counsel's insufficient performance, the results of the proceedings would have been different. *Id*. at 694. Unlike the first prong of the test, when examining the potential prejudice faced by the defendant, the court is allowed to issue judgment based on hindsight. *Lockhart v. Fretwell,* 506 U.S. 364, 371 (1993).

Even if Paul's counsel's performance fell below the objective standard of reasonable performance, then, as discussed above, Paul is unable to show he suffered prejudiced as to the alleged erroneous jury instructions. There is no reasonable probability that a jury would have acquitted Paul of violating § 1111(a).

**III. Paul's Competency Claims Have Been Raised and Denied**

The Eighth Circuit has already addressed Paul's incompetency claim alleged in Ground III. *Paul*, 534 F.3d at 844-45. Issues decided on direct appeal cannot be raised again in a § 2255 motion. *United States v. Kraemer*, 810 F.2d 173, 177 (8th Cir.1987) (defendant cannot raise the same issues in motion to vacate a sentence that have been decided on direct appeal or in new trial motion); *see United States v. Davis*, 406 F.3d 505, 511 (8th Cir.2005), cert. denied, 126 S.Ct. 1083 (2006) (same claim in different clothes will not be reconsidered on collateral review). The writ of habeas corpus is not meant to allow prisoners to relitigate their previously unsuccessful claims. Accordingly, "[c]laims which were raised and decided on direct appeal cannot be re-litigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *Dall v. United States*, 957 F.2d 571, 572 (8th Cir.1992) (per curiam), (*quoting United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir.1981) (per curiam).

Because the Eighth Circuit considered Paul's claim on direct review, his claim may not be relitigated in a petition for relief under 28 U.S.C. § 2255. *Thompson v. United States*, 7 F.3d 1377, 1379 (8th Cir.1993), cert. denied. 511 U.S. 1010 (1994) (Appellant's petition to vacate is procedurally barred when it constitutes an attempt to relitigate issues considered and rejected on direct appeal); *United States v. Gaus*, 751 F.2d 1506, 1507 (8th Cir.1985) (prisoner seeking post-conviction relief could not relitigate claim that was decided adversely to him on direct appeal). In the absence of an intervening change in the law, or newly discovered evidence, the District Court should not reconsider any claim that was resolved on direct appeal in a § 2255 habeas proceeding. *See Davis v. United States*, 417 U.S. 333, 342 (1974) (Defendant was entitled to relitigate on motion to vacate judgment an issue which was decided on direct appeal where there had been an intervening change in the law.). Therefore, because Paul's claim has been decided adversely against him on direct appeal and there has been no change in the law or newly discovered evidence relevant to his case, this claim should be dismissed.

## IV. McCoy is Inapplicable to Paul's Case

Paul further challenges his conviction on the ground that, in light of the United States Supreme Court's decision in *McCoy v. Louisiana*, 584 U.S. 414 (2018), his autonomy was violated when defense counsel ignored his instruction not to concede his guilt in the guilt phase of trial and instead argued that Paul took part in the robbery of Sherman Williams but did not intend to kill anyone. Paul cannot succeed in this claim because he cannot demonstrate that *McCoy* applies retroactively in collateral proceedings. Moreover, he cannot establish that counsel undermined his expressed objectives for the defense.

**A. *McCoy* is Not Retroactively Available to Cases on Collateral Review**

In *McCoy*, the United States Supreme Court considered a defendant's claim that his Sixth Amendment right to choose the objective of his defense was violated when, over his repeated objection, his trial counsel admitted guilt during the guilt phase of trial in an effort to avoid the death penalty. 584 U.S. at 417. There, the Supreme Court held that a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty. *Id*.

However, the Court need not address Paul's *McCoy* claim because the Supreme Court's decision is not retroactively applicable on collateral review. *McCoy,* which was issued in May 2018, enunciates a rule of constitutional law. "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). Generally, however, constitutional rules are not applied to cases, such as this one, being considered on collateral review. *Teague v. Lane*, 489 U.S. 288, 303 (1989). "Unless they fall within an exception to the general rule, new rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* at 310.

Under *Teague*, new procedural rules do not apply retroactively to cases on collateral review unless they qualify as "watershed" rules implicating "the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks*, 494 U.S. 484, 495 (1990). "Two exceptions to the *Teague* rule, however, permit the retroactive application of a new rule whenever: 1) the rule places a class of private conduct beyond the power of the State to proscribe, ... or addresses a "substantive categorical guarante[e] accorded by the Constitution," such as a rule "prohibiting a certain

category of punishment for a class of defendants because of their status or offense"; or 2) the rule announces new '"watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks,* 494 U.S. 484, 494-95 (1990) (internal citations omitted). "A rule is substantive ... if it alters the range of conduct or the class of persons that the law punishes." *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004). "In contrast, rules that regulate only the manner of determining the defendant's culpability are procedural." *Id*. And a rule is a "watershed rule of criminal procedure" if it "implicat[es] the fundamental fairness and accuracy of the criminal proceeding." *Id*. at 352 (citation and quotation marks omitted). The Supreme Court has explained that this latter class of rules "is extremely narrow." *Id*. A new rule of procedure that "merely raise[s] the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise" is not enough to constitute a "watershed" procedural rule and generally does not apply retroactively to cases on collateral review. *Id*.

Courts addressing the issue have held that the Supreme Court's decision in *McCoy* is not retroactively applicable on collateral review. *See Smith v. Stein*, 982 F.3d 229, 235 (4th Cir.2020) ("We hold that the rule announced in *McCoy v. Louisiana*, is not retroactively applicable on collateral review."); *Christian v. Thomas*, 982 F.3d 1215, 1225 (9th Cir.2020) ("We therefore conclude that the Supreme Court has not made *McCoy v. Louisiana* retroactive to cases on collateral review."). Indeed, the Supreme Court has cast doubt on whether *McCoy* is applicable to cases on collateral review when it declined to review a capital case in which the defendant was on the verge of execution in a case where, at trial, his counsel had conceded his guilt (and instead pursued an insanity defense) against his express wishes. *Crawford v. Mississippi*, 146 S.Ct. 33 (2025).

**B. *McCoy* does not Assist Paul**

Even assuming McCoy applies retroactively to this collateral proceeding, Paul cannot make a prima facie showing that *McCoy* applies to the facts of his case. The record in *McCoy* left no ambiguity as to the defendant's effective insistence. "Throughout the proceedings, [McCoy] insistently maintained he was out of State" during the murders, which he attributed to corrupt police officers. *Id*. at 418. He informed the trial court that his relationship with appointed counsel had "broken down irretrievably" and he obtained permission to proceed *pro se* until his parents could retain an attorney. *Id*. When informed, two weeks before trial, that the retained attorney intended to concede guilt, McCoy furiously insisted the attorney pursue acquittal. *Id*. at 418-19. On the eve of trial, McCoy sought to terminate counsel, who asked that the court relieve him if the defendant secured another attorney. *Id*. The court denied the request while stating that counsel had the power to determine the aims of the defense. *Id*. Consistent with that advice, counsel admitted during opening statement that the jury could not reasonably conclude McCoy had not killed the victims. *Id*.

In contrast to the clear statements that animated the *McCoy* decision, Paul does not identify any evidence, in or out of the record, that he forbade his attorneys from conceding his culpability. Instead, he observes that he refused to plead guilty and accept a life sentence. Mot. at 59. Neither of those actions brings this case within *McCoy*. Unlike the defendant in that case, Paul made repeated pre-trial admissions to acquaintances and confessed the charged murder to law enforcement. During post-conviction litigation Paul alleged that trial counsel offered him inadequate "advice and counsel regarding his decisions concerning the plea in the case,"[3] implying

[3] Elsewhere, Paul alleged trial counsel labored under a conflict of interest and attributed his rejection of the plea offer to his supposed lack of competency. *Paul v. United States*, No. 96CR60022-001, Doc. 271 at 251 & 303.

that he was subjectively willing to accept a life sentence if appropriately informed of his litigation risks. *See Paul v. United States*, No. 96CR60022-001, Doc. 271 at 306. Although Paul alleged any number of errors by his trial counsel, he nowhere asserted that they ignored his expressed direction not to concede guilt. He fails to include any evidence that he ever expressed such aims for his defense, and the transcript does not reflect any effort on his part to interrupt counsel's opening statement. *See* Trial Tr. Vol. 2, pp. 489-99.

In short, Paul does not contend that counsel failed to pursue his defense objectives, much less that they overtly conceded guilt over his objection (the actual issue in *McCoy*).

**V. The Eighth Circuit Does Not Recognize Claims Based on Cumulative Error**

Finally, Paul claims to be entitled to relief based on the cumulative effect of the forgoing constitutional claims. Such claim is without merit because the Eighth Circuit does not recognize a claim of "cumulative error." *Pryor v. Norris*, 103 F.3d 710, 714 n.6 (8th Cir.1997); *United States v. Stewart*, 20 F.3d 911, 917 18 (8th Cir.1994). The Eighth Circuit has repeatedly recognized "a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir.2006) (*quoting Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir.2002)); *see United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) (The Eighth Circuit has "repeatedly rejected the cumulative error theory of post-conviction relief."). Instead, each claim must be examined independently rather than collectively, *Hall v. Luebbers*, 296 F.3d 685, 692-93 (8th Cir.2002) (*citing Wainwright v. Lockheart*, 80 F.3d 1226, 1233 (8th Cir.1996)), as each claim must rise or fall on its own merits, *Scott v. Jones*, 915 F.2d 1188, 1191 (8th Cir.1990). Cumulative error will not justify habeas relief. *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir.2006). As such, Paul's cumulative error claim must also be denied.

**VI. No Evidentiary Hearing Is Required and No Certificate of Appealability Should Issue**

Title 28, U.S.C. § 2255 provides in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

28 U.S.C. § 2255(b).

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. . .

The Eighth Circuit Court of Appeals has explained,

> "Evidentiary hearings on 28 U.S.C. § 2255 motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists." [*Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir.2013)]. "The district court is not permitted to make a credibility determination on the affidavits alone." *Id*. at 1206.

*United States v. Sellner*, 773 F.3d 927, 929 (8th Cir.2014). Indeed, "[w]here petitioner's allegations, if true, amount to ineffective assistance of counsel, a hearing must be held unless the record 'affirmatively refutes the factual assertions upon which [the claim] is based.' " *Franco v. United States*, 762 F.3d 761, 763 (8th Cir.2014) (*citing Watson v. United States*, 493 F.3d 960, 964 (8th Cir.2007), *in turn quoting Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir.1994)). On the other hand,

> [The district court] may ... deny an evidentiary hearing if "(1) the [petitioner's] allegations, accepted as true, would not entitle the [petitioner] to relief, or (2) the allegations cannot be accepted as true

> because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." [*Thomas*, 737 F.3d] at 1206–07 (alterations in original) (*quoting Buster v. United States,* 447 F.3d 1130, 1132 (8th Cir.2006)).

*Sellner*, 773 F.3d at 929-930; *accord Anderson v. United States*, 762 F.3d 787, 792 (8th Cir.2014) (*citing* 28 U.S.C. § 2255(b)); *Franco*, 762 F.3d at 763; *Winters v. United States*, 716 F.3d 1098, 1103 (8th Cir.2013). The district court's denial of an evidentiary hearing is reviewed for abuse of discretion. *Sellner*, 773 F.3d at 929; *see also United States v. Frausto*, 754 F.3d 640, 642 (8th Cir. 2014) (explaining that, to determine whether the district court abused its discretion in denying an evidentiary hearing, the court must review *de novo* the validity of a petitioner's § 2255 claims).

Here, an evidentiary hearing is both unwarranted and unnecessary as the issues raised by Paul in his § 2255 Motion are resolvable by reviewing the record. As discussed above, after reviewing Paul's claim against the record and applicable law, it can be conclusively determined from the motion, files, and records of the case that Paul's claims are contrary to the relevant law and/or are inadequate on their face. Thus, an evidentiary hearing is unnecessary. *Blankenship v. United States*, 159 F.3d 336, 337 (8th Cir.1998).

When the district court has denied a motion under 28 U.S.C. § 2255, the movant may not appeal without a certificate of appealability. Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" under this section is a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In other words, a "substantial showing" is made if "a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.1997). In this case, as demonstrated above, Spivey has not made a substantial showing of

the denial of a constitutional right. Accordingly, this Court should deny any request for a certificate of appealability.

**CONCLUSION**

WHEREFORE, for the reasons and authorities set forth above, the respondent respectfully urges the Court to dismiss Paul's Amended Motion to Modify, Correct, or Vacate Sentence Pursuant to 28 U.S.C. § 2255.

Respectfully submitted,
Kimberly D. Harris
Interim United States Attorney

By: /s/Dustin S. Roberts
Dustin S. Roberts
Assistant U.S. Attorney
Arkansas Bar No. 20005185
414 Parker Avenue
Fort Smith, AR 72901
Telephone: (479) 783-5125
E-mail: Dustin.Roberts@usdoj.gov

CERTIFICATE OF SERVICE

I certify that on March 5, 2026, a copy of the foregoing Response to Amended Motion to Modify, Correct, or Vacate Sentence Pursuant to 28 U.S.C. § 2255 was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system:

Shawn Nolan
Federal Community Defender Office
For the Eastern District of Pennsylvania
Shawn_Nolan@fd.org

Peter Williams
Federal Community Defender Office
For the Eastern District of Pennsylvania
Pete_Williams@fd.org

By: /s/Dustin S. Roberts
Dustin S. Roberts
Assistant U.S. Attorney